United States District Court
for the
District of South Carolina
Spartanburg Division

| | |
|---|---|
| Robert Moss, individually and as general guardian of his minor child,<br><br>and<br><br>Ellen Tillett, individually and as general guardian of her minor child,<br><br>and<br><br>The Freedom From Religion Foundation, Inc.,<br>                    Plaintiffs<br><br>v.<br><br>Spartanburg County School District No. 7, a South Carolina body politic and corporate<br>                    Defendant | Civil Action No. 7:09-1586-RBH |

## COMPLAINT

Plaintiffs, complaining of Defendant, say:

### Subject Matter Jurisdiction

1. This case arises under the Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. This Court accordingly has subject matter jurisdiction of this action pursuant to 28 U.S.C. 1331.

1

2. This is an action to remedy the deprivation under color of South Carolina law of rights secured to plaintiffs by these same constitutional provisions. This Court accordingly has subject matter jurisdiction pursuant to 28 U.S.C. 1343(a)(3),(4).

3. This is an action for a declaratory judgment, pursuant to 28 U.S.C. 2201.

4. This is an action to declare unconstitutional defendant's implementation of its Released Time For Religious Education Policy ("Policy").

Venue

5. Venue is properly laid in this judicial district because a substantial part of the events or omissions giving rise to the claims occurred in this Division and because Defendant does business in this District relating to the events or omissions alleged.

Parties and Standing

6. Plaintiffs Robert Moss and Ellen Tillett are citizens and residents and municipal taxpayers of Spartanburg County, South Carolina. Each is the natural guardian of a minor child who is enrolled at Spartanburg High School in Spartanburg, South Carolina, a public high school owned and operated by Defendant. For the academic year 2009-2010 Plaintiff Moss's child will enter the twelfth grade and plaintiff Tillett's child will enter the eleventh grade.

7. Each parent plaintiff and each minor child was and is adversely affected in fact by defendant's implementation of the Policy.

8. Each parent plaintiff and each minor child believes that the implementation of the Policy violates the Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

9. Each parent plaintiff sues for himself or herself individually and as representative of his or her minor child. Each parent plaintiff and each minor child has been and is offended by and emotionally affected by the defendant's implementation of the Policy in some or all of the following ways. Prior to the enactment of the Policy each parent plaintiff received through the mails and shared

with his or her minor child a letter, attached as Exhibit A[1] and incorporated by reference, from the organization that then proposed, was later selected to offer, and now offers the released time religious education course implemented by Defendant under the Policy.  Upon information and belief Defendant had supplied the released time provider with the names and addresses of all rising tenth, eleventh and twelfth grade students at Spartanburg High School so that this letter could be sent.  Plaintiff Moss wrote remarks opposing enactment and implementation of the Policy, which were publicly presented to Defendant at the meeting at which the Policy was enacted.  He was subjected to adverse public comment on account of these remarks and his opposition to the Policy and its implementation.  He complained about the Policy and its implementation to the Chairman of defendant's Board of Trustees and its Acting Superintendent.  They summarily dismissed his concerns and objections.  He told his minor child and Plaintiff Tillett of this meeting, and Plaintiff Tillett told her minor child of it.

10.  Each parent plaintiff and each minor child has come into offensive contact with the implementation of the Policy.

11.  Each minor child is subject to academic disadvantage by the implementation of the Policy, in that the granting of academic grades by defendant for released time classes affects his or her class rank, which is used to determine eligibility for Legislative Incentives for Future Excellence (LIFE) scholarships (South Carolina Code 59-149-50(A) (2007)) and is a significant determinant in qualification for other educational opportunities.

12.  Defendant aids its released time provider in carrying out its religious mission by the threat of enforcement of its compulsory attendance powers against students enrolled in the released time course.

13.  The parent plaintiffs pay taxes that support defendant.  Defendant has used measureable portions of its tax revenues to investigate and approve and implement the Policy.

14.  The plaintiff Freedom From Religion Foundation is a Wisconsin non-stock corporation with its principal office in Madison, Wis.  As a national non-profit

---

[1] A non-substantive portion of this letter appears to have been deleted in an electronic transfer. Plaintiff will seek an undeleted copy in discovery and provide it to the Court.

educational charity under IRS Code 501(c)(3) the Foundation works to defend the constitutional principle of separation between church and state, as well as to educate the public about the views of nontheists. The Foundation represents 82 members in South Carolina and 13,700 members nationwide. These members are opposed to government endorsement of religion and violations of the Establishment of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

15. Defendant is a South Carolina body politic and corporate and may be sued in its own name. It is sued in its official capacity only.

## Facts Alleged

16. The facts alleged as to parties and standing are incorporated by reference.

17. South Carolina has previously enacted South Carolina Code Sec. 59-1-460, "Excused School Attendance For Religious Instruction," which provides:

_____

(A) The school district board of trustees may adopt a policy that authorizes a student to be excused from school to attend a class in religious instruction conducted by a private entity if:

(1) the student's parent or guardian gives written consent;

(2) the sponsoring entity maintains attendance records and makes them available to the public school the student attends;

(3) transportation to and from the place of instruction, including transportation for students with disabilities, is the complete responsibility of the sponsoring entity, parent, or guardian;

(4) the sponsoring entity makes provisions for and assumes liability for the student who is excused;  and

(5) no public funds are expended and no public school personnel are involved in providing the religious instruction.

(B) It is the responsibility of a participating student to make up any missed schoolwork. However, no student may be released from a core academic subject class to attend a religious instruction class. While in attendance in a religious instruction class pursuant to this section, a student is not considered to be absent from school.

_____

18. In 2006 the State of South Carolina enacted Senate Bill S-148, the "South Carolina Released Time Credit Act," which provides:

_____

Whereas, the South Carolina General Assembly finds that:

(1) The free exercise of religion is an inherent, fundamental, and inalienable right secure by the First Amendment to the United States Constitution.
(2) The free exercise of religion is important to the intellectual, moral, ethical and civic development of students in South Carolina, and that any such exercise must be conducted in a constitutionally appropriate manner.

(3) The United States Supreme Court, in its decision, *Zorach v. Clausen*, 343 U.S. 306 (1952), upheld the constitutionality of released time programs for religious instruction assuring the school day if the programs take place away from school grounds, school officials do not promote attendance at religious classes, and solicitation of students to attend is not done at the expense of public schools.

(4) The federal Constitution and state law allow the state's school districts to offer religious released time education for the benefit of the state's public school students.

(5) The purpose of this act is to incorporate a constitutionally acceptable method of allowing school districts to award the state's public high school students elective Carnegie unit credits for classes in religious instruction taken during the school day in released time programs, because the absence of an ability to award such credits has essentially eliminated the school

districts' ability to accommodate parents' and students' desires to participate in released time programs.

Now, therefore, Be it enacted by the General Assembly of the State of South Carolina:

SECTION 1. This Act may be cited as the "South Carolina Released Time Credit Act".

SECTION 2.[2] (A) A school district board of trustees may award high school students no more than two elective Carnegie units for the completion of released time classes in religious instruction as specified in Section 59-1-460 if:

    (1) for the purpose of awarding elective Carnegie units, the released time classes in religious instruction are evaluated on the basis of purely secular criteria that are substantially the same criteria used to evaluate similar classes at established private high schools for the purpose of determining whether a student transferring to a public high school from a private high school will be awarded elective Carnegie units for such classes. However, any criteria that released time classes must be taken at an accredited private school is not applicable for the purpose of awarding Carnegie unit credits for released time classes; and

    (2) the decision to award elective Carnegie units is neutral as to, and does not involve any test for, religious content or denominational affiliation.
(B) For the purpose of subsection (A)(1), secular criteria may include, but are not limited to, the following:

    (1) number of hours of classroom instruction time;

    (2) review of the course syllabus which reflects the course requirements and materials used;

    (3) methods of assessment used in the course; and

---

[2] [The remainder of this statute, except for its severability clause, is codified at South Carolina Code Sec. 59-39-112.]

      (4) whether the course was taught by a certified teacher.

**Severability clause**

SECTION 3.  If any section, subsection, paragraph, subparagraph, sentence, clause, phrase or word of this act is for any reason held to be unconstitutional or invalid, such holding shall not affect the constitutionality of validity of the remaining portions of this act, the General Assembly hereby declaring that it would have passed this act, and each and every section, subsection, paragraph, subparagraph, sentence, clause, phrase or word thereof, irrespective of the fact that any one or more other, subsections, paragraphs, subparagraphs, sentences, clauses, phrases or words thereof may be declared to be unconstitutional, invalid, or otherwise ineffective.

      _____

    19.  Spartanburg High School is one of the schools governed by defendant. It is the only high school under defendant's governance.

    20.  After the passage of the Released Time Credit Act, South Carolina Bible Education in School Time (SCBEST), a private religious organization, requested of defendant that it be allowed to present an elective class of released time religious instruction to students at Spartanburg High School whose parent or guardian gave permission for their attendance.

    21.  On January 9, 2007 defendant took this action.

      _____

    **D.  Approval of Released Time (SCBEST).** Mr. Tillotson [a trustee of defendant] brought forth a motion from the Instructional Services Committee to allow the high school to offer its students elective credit for off-campus religious education and for the district to adopt the SC State Law S-148: Released Time for High School Credit as its model.  The off-campus classes will be provided through Spartanburg County Bible Education In School Time (SCBEST), formerly known as Spartanburg County Release Time.  Mr. Drew Martin will head up the SCBEST initiative for the district.  Additionally, Mr. Tillotson informed the board that the district would adopt

a release time policy in accordance with board guidelines. All board members were in favor of the motion to offer the release-time credit and to adopt SC State law S[enate Bill]-148.

_____

22. On February 6, 2007, Defendant approved the Policy "Released Time For Religious Instruction" on first reading.

23. On March 6, 2007, Defendant approved the Policy. The Policy provides:

_____

**RELEASED TIME FOR RELIGIOUS INSTRUCTION.** *Code* **JHCB** *Issued* **3/07.**

Purpose: To establish the basic structure for released time for students for religious instruction.

The board will release students in grades seven through twelve from school, at the written request of their parent/legal guardian, for the purpose of religious instruction for a portion of the day. The school will consider this part of the school day.

The Board will not allow the student to miss required instructional time for the purpose of religious instruction. Any absences for this purpose must be during a student's non-instructional or elective periods of the school day.

When approving the release of students for religious instruction, the board assumes no responsibility for the program or liability for the students involved. Its attitude will be one of cooperation with the various sponsoring groups of the school district.

The sponsoring group or the student's parent/legal guardian is completely responsible for transportation to and from the place of instruction. The district assumes no responsibility or liability for such transportation.

Religious instruction must take place away from school property and at a regularly designated location.

District officials will insure that no public funds will be expended to support a released time program and that district staff and faculty will not promote or discourage participation by district students in a released time program.

**Elective credit**

The district will accept no more than two elective Carnegie unit credits for religious instruction taken during the school day in accordance with this policy. The district will evaluate the classes on the basis of purely secular criteria prior to accepting credit. The district will accept off campus transfer of credit for release time classes with prior approval.

Adopted 3/07

Legal references:

A. S.C. Code of Laws, 1976, as amended:

    1. Section 59-1-460 - South Carolina Released Time for Religious Education Act.

    2. Section 59-39-112 - South Carolina Released Time Credit Act.

_____

24. Defendant knew prior to adopting the Policy that SCBEST intended to teach and would teach, and SCBEST has since taught, an evangelical and sectarian and proselytizing course of religious instruction that pursues one or more of these and similar objectives:

a. teach the students the meaning of Christ's Resurrection in their lives;

b. teach the students how a Christian should think through various contemporary issues;

c. give the students the opportunity to accept Jesus and their Lord and Saviour;

    d.  teach the students how they ought to live on account of the Bible and the basic tenets of the Christian faith;

    e.  be taught for the first year by a teacher who had become a Minister of the Gospel so that he could teach the released time course;

    f.  be intended to help students cultivate a Biblical worldview; and

    g.  teach students to use the course material in bearing faithful witness to the Christian Gospel, using a curriculum that was deliberately structured to help the student develop a Christian worldview.

    25.  The released time course has been taught as described above for the 2007-08 and 2008-09 academic years and upon information and belief will continue to be so taught until declared unlawful by this Court.

    26.  Defendant has delegated to SCBEST an unconstrained power to discriminate among students based on their perceived religious status or progress or lack thereof.

    27.  Defendant has delegated to SCBEST the power to perform the governmental function of granting public school grades.

    28.  The released time course as forecast and as implemented by defendant could not be taught in a public high school or using public funds because to do so would violate the Establishment Clause of the United States Constitution.

    29.  South Carolina State Board of Education Regulation R 43-273, effective December 26, 2003, Transfers and withdrawals ("Transfer Regulations") provides in part:

    _____

    Grades 9-12:
    Transfer of Students
    . . .  2.  Units earned by a student in an accredited high school of this state or in a school of another state which is accredited under the regulations of the board of education of that state, or the appropriate regional accrediting

agency (New England Association of Colleges and Schools, Middle States Association of Colleges and Schools, Southern Association of Colleges and Schools, North Central Association of Colleges and Schools, Western Association of Colleges and Schools, and the Northwest Association of Colleges and Schools), will be accepted under the same value which would apply to students in the school to which they transferred.

    3.  If a student transfers from a school, which is not accredited, he or she shall be given tests to evaluate prior academic work and/or be given a tentative assignment in classes for a probationary period.

_____

    30.  Defendant is required by South Carolina law to apply the Transfer Regulations when deciding whether to grant academic credit for released time religious education.

    31.  SCBEST is not an accredited high school within the meaning of the Transfer Regulations.

    32.  Paragraph 3 of the Transfer Regulations controls the granting of academic credit for public high school grades for the SCBEST course and all other courses taught by unaccredited schools.

    33.  Application of the requirement of Paragraph 3 of the Transfer Regulations that a student "shall be given tests to evaluate prior academic work" would require defendant to assess the religious content of a released time religious instruction course for which academic transfer credit was sought, in violation of the Establishment Clause of the First Amendment to the United States Constitution.

    34.  The requirement of Paragraph 3 of the Transfer Regulations that the student "be given a tentative assignment in classes for a probationary period" cannot be implemented because no equivalent course may be taught in a public high school.

    35.  Defendant and SCBEST have arranged for the grade assigned to released time students by SCBEST to be reported to defendant by Oakbrook

11

Preparatory School (Oakbrook), a private religious school located in Spartanburg, South Carolina, which is accredited within the meaning of the Transfer Regulations, as if the SCBEST grade were an Oakbrook Preparatory grade. Upon information and belief there is little or no formal or substantive educational connection between Oakbrook Preparatory School and SCBEST.

36. Upon information and belief:

(a) the grades submitted by Oakbrook to defendant are treated by defendant as coming from Oakbrook and not from SCBEST, Paragraph 2 of the Transfer Regulations is applied to them, and without further inquiry they are entered upon the student's official transcript and credited as satisfying an elective requirement and used to compute grade point averages;

(b) in so doing Defendant ignores its knowledge that the SCBEST course is a sectarian and proselytizing and evangelical course and a course which could not be constitutionally taught in any public school in the United States; and

(c) other unaccredited schools subject to application of Paragraph 3 of the Transfer Regulations are not allowed by defendant to have their grades reported as coming from an accredited school.

37. By its implementation of the Policy defendant has substantially aided SCBEST in the fulfillment of its religious mission.

### Claim: Violation of Establishment Clause

38. All preceding allegations are incorporated by reference.

39. Defendant's implementation of its Policy

(a) has advanced and preferred and endorsed religion,

(b) has been done with a purpose to aid religion,

(c) has had the effect of aiding religion, and

(d) has entangled defendant in religion,

all in violation of the Establishment Clause of the First Amendment to the United States Constitution.

ACCORDINGLY, plaintiffs respectfully pray that the Court issue its Judgment declaring that defendant's implementation of its Released Time For Religious Instruction Policy is unconstitutional, and that they have and recover their costs, expenses, reasonable counsel fees and other relief as merited.

Respectfully submitted, June 12, 2009.

> s/ Aaron J. Kozloski
> D.S.C. Bar. No. 9510
> Capitol Counsel
> P.O. Box 11902
> Capitol Station
> Columbia, S.C. 29211
> Tel: 803-748-1320
> Fax: 8-3-255-7074
> Aaron@capitolcounsel.us
>
> George Daly
> (*pro hac vice* motion pending)
> 139 Altondale Avenue
> Charlotte N.C. 28207
> Tel: 704-333-5196
> Gdaly1@bellsouth.net
> N.C. Bar No. 1071
>
> Attorneys for Plaintiffs