# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF SOUTH CAROLINA
## SPARTANBURG DIVISION

| | | |
|---|---|---|
| Robert Moss, individually and as | ) | |
| general guardian of his minor child, | ) | |
| and Ellen Tillett, individually and as | ) | |
| general guardian of her minor child, | ) | CA No. 7:09-CV-1586-HMH |
| and The Freedom From Religion | ) | |
| Foundation, Inc., | ) | |
| *Plaintiffs,* | ) | |
| ~ *vs.* ~ | ) | |
| | ) | |
| Spartanburg County School | ) | |
| District No. 7, a body politic and | ) | |
| corporate, | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS
_____

## TABLE OF CONTENTS

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . .  2

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    A. *Standing*

    1.    Defendant has conceded that plaintiffs Moss and Tillett have
    standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2. Plaintiffs Moss and Tillett have standing because they are parents of children who currently attend a school subject to the released time program. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

3. Plaintiffs Moss and Tillett have standing because they and their children have come into unwelcome direct contact with a governmental action that violates the Establishment Clause. . . . . . . . 8

4. Plaintiff Freedom From Religion Foundation has standing to represent its own interests and those of its members. . . . . . . . . . . . 15

B. *Establishment Clause* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1. Plaintiffs have stated a claim that defendant has an entirely religious purpose for granting public school academic credit for proselytizing, sectarian and evangelical religious released time courses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

2. Plaintiffs have stated a claim of religious advancement and endorsement by alleging that defendant has, by an evasive fiction, delegated to SCBEST the power to grant public school academic grades for proselytizing, evangelical and sectarian religious released time classes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

3. Defendant has excessively entangled itself with SCBEST by donating a governmental power to it. . . . . . . . . . . . . . . . . . . . . . . 26

4. Defendant's exemption of SCBEST from the Transfer Regulations is an unconstitutional denominational preference. . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

## U.S. Supreme Court Cases

*Ashcroft v. Iqbal*
556 U.S. ___, 129 S.Ct. ___, 173 L.Ed. 2d 868 (2009) . . . . . . . . . . . . . . 1

*Allegheny County v. ACLU*
492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed 2d 472 (1989) . . . . . . . . . . 28 n. 12

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957) . . . . . . . . 12

*Edwards v. Aguillard*
482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed. 2d 510 (1987) . . . . . . . . . . . . . . 20

*Epperson v. Arkansas*
393 U.S. 97, 89 S.Ct 266, 21 L.Ed. 2d 228 (1968) . . . . . . . . . . . . . . . . . . 20

*Florida Lime and Avocado Growers, Inc. v. Paul*
373 U.S. 132, 83 U.S. 1210, 10 L.Ed. 2d 248 (1963) . . . . . . . . . . . . . . .. . . . 28

*Friends of the Earth v. Laidlaw Envt'l Svcs.*
528 U.S. 167, 120 S.Ct. 393,145 L.Ed. 2d 610, 626 (2000) . . . . . . . . . . 8

*Larkin v. Grendel's Den*
459 U.S. 116, 103 S.Ct. 505, 74 L.Ed. 2d 297 (1982) . . . . . . . . 25, 26, 28, 29

*Larson v. Valente*
456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed. 2d 33 (1982) . . . . . . . . . . . . . . 16, 29

*Lemon v. Kurtzman*, 403 U.S. 602 (1971) . . . . . . . . . . . . . . . . . . . . 21, 25, 26

*Lujan v. Defenders of Wildlife*
504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992) . . . . . . . . . . . . . . 16

*McCollum v. Board of Education*
333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948) . . . . . . . . . . . . . . . . . 21, 29

*Meek v. Pittenger*, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed. 2d 217 (1971) . . . 21

*Rockwell Int'l v. United States*
549 U.S. 457, 127 S.Ct. 1397, 167 L.Ed 2d 190 (2007) . . . . . . . . . . . . . 1, 16

*Santa Fe Indep. Sch. Dist. v. Doe*
530 U.S. 290, 120 S.Ct. 2266, 147 L.Ed. 2d 295 (2000) . . . . . . . . . . . 7, 8

*Scheuer v. Rhodes*
416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed. 2d 90 (1974) . . . . . . . . . . . . . . . . . 6

*School Dist. of Abington Twp. v. Schempp*
374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed 2d 844 (1963) . . . . . 9, 11, 20, 22, 23

*Sierra Club v. Morton,*
405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed. 2d 636 (1972) . . . . . . . . . . . . . . . 16

*Stone v. Graham*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed. 2d 199 (1980) . . . . 20

*Watson v. Jones*, 13 Wall. 679, 20 L.Ed. 666 (1872) . . . . . . . . . . . . . . . . . 26

*Wallace v. Jaffree*
472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed. 2d 29 (1985) . . . . . . . . . . . . . . . 18, 20

*Zorach v. Clauson*
343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952) . . . . . . 7, 19, 20, 21, 25, 29

## U.S. Circuit Courts of Appeal Cases

*Connectu LLP v. Zuckerberg*, 522 F. 3d 82 (1st Cir. 2008) . . . . . . . . . . . . . . 1

*Lambeth v. Davidson County,* 407 F.3d 266 (4th Cir. 2005) . . . . . . . 16, 17, 21

*NCCLU v. Constangy,* 947 F. 2d 1145, 1149-50 (4th Cir. 1991) . . . . . . . . . 18

*South Carolina Wildlife Fed. v. Limehouse,* 549 F.2d 324 (4th Cir. 2008) . . . 14

*Smith v. Smith*, 523 F.2d 121 (4th Cir. 1975) . . . . . . . . . . . . . . . . . . . . 21, 29

*Suhre v. Haywood County*, 131 F. 3d 1083 (4th Cir. 1997) . . . . . 7-9, 11, 13

## S.C. Supreme Court Cases

*Harmon v. Dreher,* 1 Speers Eq. 87, 120 (S.C. App. 1843) . . . . . . . . . . . . 26

## S.C. Statutes

S.C. CODE ANN. § 59-1-480(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## Federal Rules of Civil Procedure

*Fed. R. Civ. P.* 7(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Fed. R. Civ. P.* 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Fed. R. Civ. P.* 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Fed. R. Civ. P.* 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## Treatises

Tribe, *American Constitutional Law* (3d ed., 2000) § 5.19 . . . . . . . . . . . . 28

5 Wright, Miller & Kane, *Federal Practice and Procedure Civil 3d,* § 1192 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6 Wright, Miller & Kane, *Federal Practice and Procedure Civil 2d* § 1475 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6 Wright, Miller & Kane, *Federal Practice and Procedure Civil 2d,* § 1476 (Supp. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATEMENT OF THE CASE

The Complaint was filed on June 16, 2009.  Dkt. 1.  It pleaded that defendant had violated the Establishment Clause of the United States Constitution by implementing its Released Time For Religious Education Policy.  On August 31, 2009, defendant moved to dismiss pursuant to *Fed. R. Civ. P*. 12(b)(1) for lack of standing and pursuant to *Fed. R. Civ. P.* 12(b)(6) for failure to state a claim.  Dkt. 19.  On September 17 plaintiffs filed a First Amended Complaint as of right under *Fed. R. Civ. P.* 15(a).  Dkt. 24.  On September 21 plaintiffs moved for leave to file and serve an attached Second Amended Complaint.  Dkt. 25.  This motion was allowed on September 24.  Dkt. 26.  The Second Amended Complaint was filed on September 30.  Dkt. 27.  On October 1 the Court ordered that the case be dismissed for failure to prosecute unless plaintiffs responded within ten days to the motion to dismiss.  Dkt. 29.  Plaintiffs now respectfully respond.

A motion to dismiss is not a "responsive pleading" within the meaning of *Fed.R.Civ.P.* 15(a).  6 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1475 (1990).  Plaintiffs amended as of right on September 17, no "responsive pleading" having been filed.  An amended complaint supersedes a complaint.  *Id.*  The Complaint ceased to have any operative effect once the First Amended Complaint was filed.  *Id; Connectu LLP v. Zuckerberg*, 522 F. 3d 82, 91 (1st Cir. 2008); *Rockwell Int'l v. United States*, 549 U.S. 457, 474, 127 S.Ct.

1397, 167 L.Ed 2d 190 (2007) ("when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction").  The Court's Order of October 1, however, directs that plaintiffs respond to the motion to dismiss the Complaint, and plaintiffs do so herein.  Additionally, in view of the established rule that the Complaint has been superseded and the possibility that the Court is construing the motion to dismiss to be directed at the Second Amended Complaint, *see* 6 Wright, Miller & Kane, *supra*, § 1476 (Supp. 2009), plaintiffs will also demonstrate that the Second Amended Complaint alleges standing and states an Establishment Clause claim.[1]

## STATEMENT OF FACTS

### *Standing*

Each adult plaintiff is the parent of a child currently attending Spartanburg High School, a public school operated by defendant. Complaint ("Cmplt.") ¶ 6; Second Amended Complaint ("2d Am. Cmplt.") ¶ 6.  Each plaintiff believes that defendant's Policy that allows academic credit for released time religious education, Cmplt. ¶23; 2d Am. Cmplt. ¶ 23, offends the Establishment Clause.

---

[1] Plaintiffs do not, however, address the Equal Protection claim stated in the Second Amended Complaint, defendant not yet having had the opportunity to decide whether to move to dismiss that claim.

Cmplt. ¶ 8. [2]

Each plaintiff has been offended and emotionally affected by the Policy, Cmplt. ¶ 9, and by its implementation, 2d Am. Cmplt. ¶ 9.  Defendant aided SCBEST in sending plaintiffs a letter which described a sectarian, evangelical and proselytizing (hereafter "sectarian," except in quotations from the pleadings) course ("The first semester will cover . . . the basic doctrines of the Christian faith.  During the second semester students will learn how they ought to live as a result . . .") and announced that SCBEST had been selected to offer the course ("The District 7 School Board recently granted SCBEST approval to begin offering this class for elective credit.").  Cmplt. Ex. A; 2d Am. Cmplt. Ex. A. Defendant knew of and approved the letter before it was sent.  2d Am. Cmplt, ¶ 9(a).  Plaintiff Moss complained to defendant when the Policy was later enacted but defendant summarily dismissed his objections.  Cmplt. ¶ 9; 2d Am. Cmplt. ¶ 9(a).  Defendant later ratified the selection of SCBEST, 2d Am. Cmplt. ¶ 25, and it now teaches the course.  Cmplt. ¶ 24; 2d Am. Cmplt. ¶¶ 9(a), 24.

Each plaintiff has come into offensive contact with the implementation of

---

[2] The scope of relief sought is narrowed by the Second Amended Complaint. The Complaint prays for a Judgment "declaring that defendant's implementation of its Released Time For Religious Instruction Policy is unconstitutional." The Second Amended Complaint prays for a Judgment "declaring that defendant's practice of granting public school academic credit for proselytizing, evangelical and sectarian religious released time education courses is unconstitutional."  One effect of the narrowing the scope of the Complaint is to make clear that plaintiffs are not challenging defendant's power under the Policy to allow such a course as is described by S.C. Code 59-29-230, "Old and New Testament era courses."

the Policy.  Cmplt. ¶ 10; 2d Am. Cmplt. ¶ 10.  Each plaintiff is fundamentally offended by the granting of academic credit for sectarian religious education. Each feels less welcome in and about Spartanburg High School on account of the receipt of the letter, defendant's unfriendly reception of plaintiff Moss, and the practice of granting academic credit.   2d Am. Cmplt. ¶ 10.   Defendant's implementation of its Policy subjects children not taking the released time course to potential academic disadvantage, in that SCBEST is at liberty to inflate its grades for religious reasons, and grades determine eligibility for various academic honors and emoluments such as LIFE scholarships and valedictorianships. Cmplt. ¶¶ 11, 26; 2d Am. Cmplt. ¶¶ 11, 26.

The Complaint did not allege that any individual plaintiff was a member of the plaintiff Freedom From Religion Foundation or that any of its members resided within defendant's jurisdiction.  The Second Amended Complaint makes both these allegations.  2d Am. Cmplt. ¶ 14.

### *Establishment Clause*

Defendant's Policy provides that it "will accept no more than two elective . . . credits for religious instruction taken during the school day in accordance with this policy."  Cmplt. ¶ 23; 2d Am. Cmplt. ¶ 23.  SCBEST had previously offered a similar release time religious education course for defendant but had to discontinue it for lack of interest.  Cmplt. Ex. A; 2d Am. Cmplt. Ex. A.  In 2007 defendant re-engaged SCBEST to teach a course pursuant to the Policy, knowing

4

that it would teach a sectarian course. Cmplt. ¶ 24; 2d Am. Cmplt. ¶ 24. Defendant's sole purpose for enacting the Policy was to implement such a course. 2d. Am. Cmplt. ¶ 25. Defendant has delegated to SCBEST the power to perform the governmental function of granting public school grades, Cmplt. ¶ 27; 2d Am. Cmplt. ¶ 27, including the power to discriminate in grading among students for religious reasons. *Id.* ¶ 26.

SCBEST is a private unaccredited school. Cmplt. ¶ 31; 2d Am. Cmplt. ¶ 31. A Regulation of the South Carolina State Board of Education requires that for grades to be transferred from private unaccredited schools either the student must be given tests to evaluate prior academic performance, or given a probationary assignment. Cmplt. ¶¶ 29, 30, 32. Defendant cannot constitutionally test for religious knowledge and cannot constitutionally offer a religious probationary course. Cmplt. ¶¶ 33, 34; 2d Am. Cmplt. ¶¶ 33, 34. This regulation effectively thwarts defendant's use of the SCBEST course. To avoid this application of controlling South Carolina law Defendant made an agreement with SCBEST and Oakwood Preparatory School, a local private accredited school having little or no connection with SCBEST, that Oakwood reports SCBEST's grades to defendant as being Oakwood grades, Cmplt. ¶¶ 35, 36, 37; 2d Am. Cmplt. ¶¶ 35, 36, 37, and defendant accepts them as such without question and credits them to the student's grade point average. Cmplt. ¶ 36, 2d Am. Cmplt. ¶ 36.

## STANDARD OF REVIEW

The Court is to accept the truth of the plaintiff's allegations and take them in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed. 2d 90 (1974). Plaintiffs need only plead facts plausibly entitling them to relief. *Ashcroft v. Iqbal,* 556 U.S. ___, 129 S.Ct. ___, 173 L.Ed. 2d 868 (2009).

## ARGUMENT

### A. *Standing*

### 1. Defendant has conceded that plaintiffs Moss and Tillett have standing.

Defendant "concedes that there do not appear to be enough facts in the Complaint for the Court to determine at this stage of the lawsuit whether [plaintiffs] Moss and Tillett have 'GPA' standing . . .". Defendant's Memorandum, dkt. 19 ("Def. Mem.") at 9. This is a concession that plaintiffs Moss and Tillett have standing. When a motion to the subject matter jurisdiction is made it must, like any motion, "state with particularity the grounds therefor." *Fed. R. Civ. P.* 7(b)(1). Defendant's statement that "there do not appear to be enough facts . . . at this stage" is another way of saying that defendant cannot presently state with particularity why plaintiff's Moss and Tillett do not have standing. *See* 5 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d,* § 1192 (2004). Defendant concedes that plaintiffs have one form of standing,

and one is enough. *Suhre v. Haywood County*, 131 F. 3d 1083, 1085 (4th Cir. 1997) (declining to consider the sufficiency of a second form of standing after the first asserted form had been found sufficient).  Therefore defendant's 12(b)(1) motion should be denied.

### 2.  Plaintiffs Moss and Tillett have standing because they are parents of children who currently attend a school subject to the released time program.

In *Zorach v. Clauson,* 343 U.S. 306, 309 n. 4, 72 S.Ct. 679, 96 L.Ed. 954 (1952), the Court held that parents of children currently attending schools subject to a released time program of religious instruction had standing.  *Zorach* is on all fours with the case at bar.  Plaintiffs Moss and Tillett fit exactly the Court's description of plaintiffs who have standing.  They are parents of children currently attending schools subject to a released time program of religious education.  Cmplt. ¶ 6; 2d Am. Cmplt. ¶ 6.

Nothing has happened since *Zorach* to cast doubt on the continued validity of its holding as to standing.  In *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 120 S.Ct. 2266, 147 L.Ed. 2d 295 (2000), parents challenged on Establishment Clause grounds a school policy that permitted students to choose one among them to deliver an invocation before home football games.  That is the same situation that obtained in *Zorach* and that obtains in the case at bar: a school policy allows for a religious exercise apart from regular school classes.  The Court reached the merits in *Santa Fe* without even a nod to standing.  Since standing is an aspect of

7

subject matter jurisdiction, *Friends of the Earth v. Laidlaw Envt'l Svcs.*, 528 U.S. 167, 180, 120 S.Ct. 393,145 L.Ed. 2d 610, 626 (2000), the Court's decision of *Santa Fe* on the merits necessarily imports a holding that its plaintiffs had standing.

### 3.    Plaintiffs Moss and Tillett have standing because they and their children have come into unwelcome direct contact with a governmental action that violates the Establishment Clause.

The basic requirements for standing are that "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth v. Laidlaw Envt'l Svcs., supra,* 528 U.S. at 180-81.

#### *Injury*

In *Suhre v. Haywood County, supra,* the court held that "unwelcome direct contact with a religious display that appears to be endorsed by the state" was a sufficiently concrete injury to give standing to a plaintiff who lived in the same town as the display.  Neither physical nor economic injury was required because

> . . . the standing inquiry in Establishment Clause cases has been tailored to reflect the kind of injuries Establishment Clause plaintiffs are likely to suffer.  Tort law is solicitous of, among other things, plaintiffs' physical well-being.  Contract law protects plaintiffs' business expectations.  But the Establishment Clause plaintiff is not likely to suffer physical injury or pecuniary loss.  Rather, "the

spiritual, value-laden beliefs of the plaintiffs" are most often affected by an alleged establishment of religion. Accordingly, rules of standing recognize that non-economic injury may suffice to make an Establishment Clause claim justiciable.

131 F.3d. at 1083 (citations omitted). Plaintiff Suhre had alleged "[P]ersonal contact with state-sponsored religious symbolism." That was "precisely the injury that was sufficient to confer standing in *School Dist. of Abington Twp. v. Schempp,* 374 U.S. 203 [83 S.Ct. 1560, 10 L.Ed 2d 844] (1963)." *Suhre*, 131 F. 3d at 1086.

Plaintiffs Moss and Tillett have alleged this same type of unwelcome personal injury, as follows:

> Each parent plaintiff and each minor child believes that defendant's practice of granting public school academic credit for sectarian released time education courses violates the Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[3]

Second Amended Complaint ¶ 8.

> Each parent plaintiff sues for himself or herself individually and as representative of his or her minor child. Each parent plaintiff and each minor child has been and is offended by and emotionally affected and distressed by the defendant's practice of granting public school academic credit for proselytizing, sectarian and evangelical religious released time education courses in the following manners and circumstances:
>
> a. Prior to the enactment of the Policy each parent plaintiff received

---

[3] ¶ 8 of the Complaint differed from the quoted allegations only in that it challenged the Policy rather than only the implementation by granting public school grades for religious released time classes. *See* n. 2, *supra*.

through the mails and shared with his or her minor child a letter, attached as Exhibit A and incorporated by reference, from Spartanburg County Bible Education in School Time (SCBEST), a private religious organization which had been selected by defendant . . .[to offer a] sectarian, evangelical and proselytizing religious released time religious education course implemented by Defendant. Upon information and belief Defendant supplied SCBEST with the names and addresses of all rising tenth, eleventh and twelfth grade students at Spartanburg High School so that this letter could be sent. Upon information and belief defendant knew of and approved the contents of this letter before it was sent.

b.    Plaintiff Moss wrote remarks opposing enactment and implementation of the Policy and the released time course as proposed, which were publicly presented to Defendant at the meeting at which the Policy was enacted.  A copy of these remarks is attached as Exhibit B and incorporated by reference.  They informed the Board that SCBEST proposed to offer an evangelical, sectarian, proselytizing religious released time course.  Plaintiff Moss was subjected to adverse public comment on account of these remarks and his opposition to the Policy and its implementation.

c.  Plaintiff Moss complained about the Policy and its implementation to the Chairman of defendant's Board of Trustees and its Acting Superintendent.    They summarily dismissed his concerns and objections.    He told his minor child and Plaintiff Tillett of this meeting, and Plaintiff Tillett told her minor child of it.[4]

Second Amended Complaint ¶ 9.

Each parent plaintiff and each minor child has come into offensive contact with the implementation of the Policy.  Each plaintiff is and has been deeply and fundamentally offended by defendant's granting of public school academic credit for the proselytizing, sectarian and evangelical religious released time education courses which this suit

---

[4] ¶ 9 of the Complaint differed from the quoted allegations only in that it reflected the greater relief initially sought, *see* n. 2, *supra*; did not in terms claim that defendant knew of and approved the content of the letter before it was sent or had ratified the selection of SCBEST; and did not mention Exhibit B.

challenges, and its violation of the Establishment Clause. Each
plaintiff feels less welcome at and about Spartanburg High School
and the offices of defendant on account of the receipt of Exhibit A,
the defendant's unfriendly reception of plaintiff Moss, and the
defendant's practice of granting public school academic credit for
sectarian released time courses.[5]

Second Amended Complaint ¶ 10. These are the type of non-economic and

value-laden injuries that make out Establishment Clause injury. Plaintiffs have

come into unwelcome contact with a State-sponsored religious practice. They are

"school children and their parents, who are directly affected by the . . . practices"

of which they complain, *School Dist. of Abington Twp. v. Schempp, supra,* 374

U.S. 203, 224 n. 9 (1963); *Suhre, supra.* They therefore have standing.

Defendant's response to these allegations is to seek to divide and conquer.

Defendant argues: (a) mere knowledge that the Policy has been enacted cannot be

enough to count as unwelcome direct contact under *Suhre,* Def. Mem. 16-17; (b)

the letter from SCBEST is not sufficient under *Suhre* because SCBEST sent its

letter before its course was approved and defendant only provided an address list,

Def. Mem. 17; and (c) defendant's summary dismissal of plaintiff Moss's

objections do not show standing because the individual members of defendant are

immune from suit. Def. Mem. 18.

Taking these items in isolation, as defendant wishes, would offend the rule

---

[5] The first sentence of ¶ 10 appears verbatim in the Complaint. The remainder of
¶ 10 as quoted was added by the Second Amended Complaint. These additional
allegations were implied in the Complaint.

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no *set of facts* in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957) (emphasis added).  The court must decide plaintiffs' standing based on the entire set of facts alleged: that plaintiffs are parents of children currently attending a public school subject to a released time program, Cmplt. ¶¶ 6, 24; 2d Am. Cmplt. ¶¶ 6, 24; that they object for First Amendment and core personal reasons to defendant's implementation of released time, *id.* ¶ 9; that they were emotionally distressed by the religiously intrusive letter from SCBEST, which defendant approved and aided in being sent and which announced that SCBEST had already been approved to offer the released time course, Cmplt. Ex. A ¶ 9; 2d Am. Cmplt. Ex. A; ¶ ¶ 9(a), 25; that plaintiff Moss appeared before defendant to challenge the implementation of the released time course and was publicly criticized for doing so, Cmplt. ¶ 9, 2d Am. Cmplt. ¶ 9(b); that he then met with defendant but it summarily dismissed his concerns, Cmplt. ¶ 9, 2d Am. Cmplt. ¶ 9(c); and that plaintiffs are fundamentally offended by this course of conduct and defendant's implementation of sectarian released time religious instruction and as a consequence feel less welcome at and about their children's school, Cmplt. ¶ 10; 2d Am. Cmplt. ¶ 10.  This is the "set of facts" upon which the court is to decide plaintiff's standing.  These facts amply show unwelcome non-economic injury of plaintiffs by defendant.

Even if defendant's objections are taken individually they are not persuasive. Defendant's argument, Def. Mem. 16-17, that plaintiffs' mere knowledge of defendant's Policy does not distinguish them from every other person in the United States, was dealt with and rejected in *Suhre*. The issue is whether the plaintiffs' injury is sufficiently concrete and particularized. In the Circuit Court's view a resident of Omaha, Nebraska would not have had standing to challenge the North Carolina courtroom display because his injury would have been too abstract, but Mr. Suhre's injury was sufficiently concrete because he lived in the same town. *Suhre,* 131 F.3d at 1086-87. Plaintiffs Moss and Tillett live in the town where the action the challenged action occurred. Their injury is likewise sufficiently concrete.

Defendant's argument, Def. Mem. 17, that the SCBEST letter is not attributable to it because defendant only gave SCBEST student addresses, and did this before SCBEST had been approved to teach the released time course, mistakes the facts. The letter says: "The District 7 School Board recently granted SCBEST approval to begin offering this course for elective credit." Cmplt, Ex. A; 2d Am. Cmplt. Ex. A. This letter was delivered before the Policy was enacted. Cmplt. ¶ 9; 2d Am Cmplt. ¶ 9(a). Plaintiff Moss later informed defendant of the sectarian nature of the SCBEST course. 2d Am. Cmplt. ¶ 9(b); Ex. B. These allegations make out a case of unwelcome receipt of a letter attributable to defendant.

13

Defendant argues, Def. Mem. 18, that unwelcome comments from the general public are not cognizable injury; but plaintiffs have alleged unwelcome comments from defendant itself.  Cmplt. ¶ 9; 2d Am. Cmplt. ¶ 9(c).  Defendant answers that fact by asserting that the individual members of defendant are immune from suit.  *Id.* at 18. This is beside the point.  Individual members of defendant have not been sued.  Standing and immunity are independent, unrelated issues. *South Carolina Wildlife Fed. v. Limehouse,* 549 F.2d 324 (4th Cir. 2008).[6]

### *Traceability*

Plaintiffs' injury is traceable to defendant.  It is defendant's implementation of its Policy that causes the injury, by granting academic credit for religious education.  Cmplt. ¶ 4; 2d Am. Cmplt. ¶ 4.   The unconstitutional course is allowed to be taught by a complex set of actions and agreements between defendant, SCBEST and Oakwood Preparatory School, which result in the ultimate delegation to SCBEST of the power to grant a public school grade.

Defendant argues, Def. Mem. 19, that plaintiffs' injury is fairly traceable only to SCBEST because the letter was sent by SCBEST without defendant's review or approval and before SCBEST was approved to teach the released time course.  This is incorrect.  The letter says:  "The District 7 School Board recently granted SCBEST approval to begin offering this course for elective credit."

---

[6] Plaintiffs do not concede that individual members of defendant would be immune from this suit.

Cmplt. Ex. A; 2d Am. Cmplt. Ex. A.  This letter was delivered before the Policy was enacted.  Cmplt. ¶ 9; 2d Am Cmplt. ¶ 9(a).  Plaintiff Moss read from it at the meeting at which the Policy was enacted.  2d Am. Cmplt. ¶ 9(b); Ex. B.

### *Redressability*

The injury will continue until the Court declares unconstitutional the implementation of the Policy.  Cmplt. ¶ 25, 2d Am. Cmplt. ¶ 25. A judgment in plaintiff's favor will redress the injury by declaring the Policy to be unconstitutional in its implementation.

Defendant argues, Def. Mem. 19-20, that such a judgment will not redress plaintiffs' injuries because the unwelcome contact was only with third parties.  This is incorrect.  Plaintiffs' central unwelcome injury is caused by defendant's allowing academic grades to be given for a sectarian religious released time course.  The declaratory judgment prayed for, *see* n.2, *supra,* will remedy this conduct.

Defendants argues, Def. Mem. 20, that plaintiffs have not alleged ongoing unwelcome contact.  This is not correct.  "The released time course has been taught [and] . . . will continue to be . . . taught until declared unlawful by this Court."  Cmplt. ¶ 25; 2d Am. Cmplt. ¶ 25.

### **4. Plaintiff Freedom From Religion Foundation has standing to represent its own interests and those of its members.**

Defendant Freedon From Religion Foundation (FFRF) has alleged that one

15

of the plaintiffs is a member of it and that other of its members reside within the jurisdiction of defendant and that it seeks to protect interests germane to its purposes.   2d Am. Cmplt. ¶ 14.   These allegations were not contained in the Complaint.   On consideration of a motion to dismiss for lack of standing they must be considered.   *Rockwell Int'l v. United States*, *supra,* 549 U.S. 457, 474 (2007).   An organization may sue on behalf of its injured members.   *Sierra Club v. Morton,* 405 U.S. 727, 738-39, 92 S.Ct. 1361, 31 L.Ed. 2d 636 (1972). General factual allegations of injury are sufficient for standing at the pleading stage.   Specific facts in support are presumed.   *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992).   FFRF has alleged standing for itself and as representative of its members.

## B. *Establishment Clause*

To defeat the motion to dismiss plaintiffs must allege facts showing one of four propositions: (1) that defendant has implemented the released time course for a religious purpose; *or* (2) that this implementation has had the principal or primary effect of advancing or endorsing religion; *or* (3) that this  implementation has excessively entangled defendant with religion; *Lambeth v. Davidson County,* 407 F.3d 266, 268-69 (4th Cir. 2005);   *or* (4) that defendant's exemption of SCBEST from the Transfer Regulations is a denominational preference.   *Larson v. Valente,* 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed. 2d 33 (1982).   Plaintiffs have stated a claim under each proposition.

**1.   Plaintiffs have stated a claim that defendant has an entirely religious purpose for granting public school academic credit for  sectarian religious released time courses.**

Plaintiff must allege that defendant has acted for an entirely religious purpose. *Lambeth v. Davidson County, supra,* 407 F.3d at 269-70.   The Complaint and Second Amended Complaint so allege:

24. Defendant knew prior to adopting the Policy that SCBEST intended to teach and would teach, and . . . SCBEST has since taught, an evangelical and sectarian and proselytizing course of religious instruction that pursues one or more of these and similar objectives:

a. Teach the students the meaning of Christ's Resurrection in their lives;

b. Teach the student how a Christian should think through various contemporary issues;

c. give the students the opportunity to accept Jesus as their Lord and Saviour; . . .

25.  The released time course has been taught as described above for the 2007-08  and 2008-09 academic years and upon information and belief will continue to be so taught until declared unlawful by this Court.  Defendant approved SCBEST to offer its course before the Policy was enacted.  Defendant ratified that approval by allowing SCBEST to continue to offer the course after the Policy was enacted.  Defendant's approval and ratification was done only and solely with the religious intent and purpose of providing proselytizing, sectarian and evangelical religious released time education courses for students attending Spartanburg High School . . .

27.  Defendant has delegated to SCBEST the power to perform the governmental function of granting public school grades.

    38.  By its implementation of the Policy defendant has substantially aided SCBEST in the fulfillment of its religious mission.[7]

Second Amended Complaint. These allegations say that defendant knew it was approving a sectarian released time religious course; that such a course has in fact been taught; and that to effect this result was defendant's sole and only purpose. This alleges that the implementation of the Policy was entirely motivated by a religious purpose.  No other motive is alleged or reasonably arises from the allegations.  Ultimately purpose is a question of state of mind, *Wallace v. Jaffree,* 472 U.S. 38, 56, 105 S.Ct. 2479, 86 L.Ed. 2d 29 (1985) ("actual purpose"), usually to be gathered from the circumstances.  *NCCLU v. Constangy,*  947 F. 2d 1145, 1149-50 (4th Cir. 1991).  The factual circumstances asserted here, taken in the light most favorable to plaintiffs, plead a claim that defendant was only and solely motivated by religious intent in implementing the Policy.

    Defendant argues that plaintiffs have only alleged that SCBEST, and not defendant, had a religious purpose.  Def. Mem. 23-24.  This is not correct. SCBEST did not enact the Policy.  SCBEST cannot award a public school grade without authority delegated by defendant.  Defendant authorized SCBEST to award grades.  Plaintiffs challenge defendant's actions, not SCBEST's actions.

---

[7] The Complaint makes all the quoted allegations of  ¶¶ 23, 25, 27 and 38 except for the last three sentences of ¶ 25.  These additional allegations make explicit the implied allegations of the Complaint. ¶ 38 of the Second Amended Complaint was numbered ¶ 37 in the Complaint.

Cmplt. ¶ 4; 2d Am. Cmplt. ¶ 4.

The Preamble to the Released Time Credit Act, Cmplt. ¶ 18(5); 2d Am. Cmplt. ¶ 18(5), also gives evidence of a religious purpose.[8]  It provides:

> The purpose of this act is to incorporate a constitutionally acceptable method of allowing school districts to award the state's public high school students elective Carnegie unit credits for classes in religious instruction taken during the school day in released time programs, because the absence of an ability to award such credits has essentially eliminated the school districts' ability to accommodate parents' and students' desires to participate in released time programs.

It is a fair inference from this text, coupled with (a) the deletion of the previous statutory requirement that students make up missed schoolwork, S.C. CODE ANN. § 59-1-480(B), Cmplt. ¶ 17(B);2d Am. Cmplt. 17(B), (b) defendant's knowledge of the previous lack of interest in SCBEST's program by Spartanburg High School students, Cmplt. Ex. A; 2d Am. Cmplt, Ex. A, (c) defendant's selection of SCBEST as its released time provider before the Policy was enacted, (d) defendant's knowledge that SCBEST had taught and would continue to teach a sectarian religious released time course, Cmplt. ¶ 24; 2d Am. Cmplt. 24, and (e) defendant's summary dismissal of plaintiff Moss's objections, Cmplt. ¶ 9; 2d Am. Cmplt ¶ 9(c), that defendant's purpose was not merely to accommodate released time religious education but to promote and encourage it. *Zorach*-style released

---

[8] Defendant has adopted this purpose as its own.  Defendant's board meeting minutes for January 2007 state that "[a]ll board members were in favor of the motion . . . to adopt SC State law [59-39-11]."  2d Am. Cmplt. ¶ 21.  The Policy itself gives the statute as a "legal reference." *Id.*

time religious education had been fully implemented by the 2002 statute and of course by *Zorach* itself, but apparently had fallen into desuetude in defendant's district.  Parents' wishes for released time religious education had been fully accommodated by *Zorach* and the 2002 statute.  Defendant offered the carrot of academic credit to encourage its revival.  This is a religious purpose.

Cases involving elementary and secondary students are notable for the frequency with which the Supreme Court has found religious purpose for official action.  *See, e.g., School Dist. of Abington Twp. v. Schempp*, *supra,* 374 U.S. 203 (1963);  *Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct 266, 21 L.Ed. 2d 228 (1968);  *Stone v. Graham*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed. 2d 199 (1980);  *Wallace v. Jaffree*, *supra,* 472 U.S. 38 (1985);  *Edwards v. Aguillard*, 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed. 2d 510 (1987).  As was said in *Edwards:*

> The Court has been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools.  Families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not be purposely used to advance religious views that may conflict with the private beliefs of the student and his or her family.  Students in such institutions are impressionable and their attendance is involuntary.

482 U.S. at 583-84.

**2.  Plaintiffs have stated a claim of religious advancement and endorsement by alleging that defendant has, by an evasive fiction, delegated to SCBEST the power to grant public school academic grades for sectarian religious released time classes.**

The United States Supreme Court has twice dealt with religious released

time classes.   In *McCollum v. Board of Education,* 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948), it held unconstitutional the practice of inviting religious instructors into public school classrooms.   In *Zorach v. Clauson, supra,* 343 U.S. 306 (1952), students were released to attend religious classes off-campus.   This practice was held constitutional.   The Fourth Circuit has taken the view that the different result in these two cases turned not on where the religious instruction took place, but on whether the religious teachers took over a position of authority held by the public school teacher.   *Smith v. Smith*, 523 F.2d 121, 123-24 and n. 6 (4th Cir. 1975).   The Circuit Court would have held that *Zorach*-type classes sufficiently delegated governmental authority to a religious institution as to be unconstitutional under the "effect" prong of *Lemon v. Kurtzman*, 403 U.S. 602, 625 (1971), but for the fact that *Zorach* had been cited in *Meek v. Pittenger*, 421 U.S. 349, 359, 95 S.Ct. 1753, 44 L.Ed. 2d 217 (1971) as being consistent with the *Lemon* test.   *Smith v. Smith, supra,* 523 F.2d at 124-25.

Whether a case presents an endorsement of religion is to be determined from the point of view of a reasonable and objective observer, acquainted with the history and context of the challenged action.   *Lambeth v. Haywood County, supra,* 407 F. 3d at 271-72.   A reasonable observer in this case would know these facts, which plaintiffs contend show delegation of public school teachers' governmental authority to a religious organization and thus an endorsement of religion:

• SCBEST began offering released time classes at Spartanburg High School

21

in 1997. "Because elective credit was not available at that time" they had to discontinue the classes after a few years, for lack of interest. Cmplt. Ex. A; 2d Am. Cmplt. Ex. A.

• In 2006 South Carolina passed the Released Time Credit Act to encourage religious released time classes by allowing academic credit for them. Cmplt. ¶ 18(5); 2d Am. Cmplt. ¶ 18(5).

• In 2007 Defendant engaged SCBEST to provide released time religious Classes for academic credit. Cmplt. Ex. A; 2d Am. Cmplt. Ex. A. Two months later defendant enacted a Policy allowing academic credit for them and adopted the purpose of the Released Time Credit Act, which was to encourage them. Cmplt. ¶¶ 21, 23; 2d Am. Cmplt. ¶¶ 21, 23.

• Defendant knew that SCBEST intended to teach sectarian classes and as expected it has done so. Cmplt. ¶ 24; 2d Am. Cmplt. ¶ 24.

• The SCBEST course is taught by unaccredited teachers, 2d Am. Cmplt. ¶ 25. Defendant does not constrain them from awarding grades based on their perception of the students' religious progress. Cmplt. ¶ 26; 2d Am. Cmplt. ¶ 26.

• Defendant is prohibited by the United States Constitution from offering in-school sectarian courses. Cmplt. ¶ 28; 2d Am. Cmplt. ¶ 28; *School Dist. of Abington Twp. v. Schempp*, *supra,* 374 U.S. 203 (1963).

• The Released Time Credit Act requires that academic credit given for released time religious education classes be determined under the Transfer

Regulations of the South Carolina State Department of Education.  Cmplt. ¶ 30; 2d Am. Cmplt. ¶ 30.  These regulations require that academic credit for grades awarded by unaccredited schools such as SCBEST be evaluated either by giving tests to evaluate the SCBEST course academically or by probationarily assigning the student to a comparable class.[9]  Application of the first of these requirements would unconstitutionally entangle defendant in deciding religious questions. *School Dist of Abington Twp., supra.*  Application of the second requirement is impossible because defendant may not constitutionally offer such a course.  *Id.*

   • To evade this dilemma SCBEST and defendant agreed with Oakbrook, a local private accredited school, that the grades awarded by SCBEST would be transmitted to defendant as being Oakbrook grades.  Oakbrook has no substantial connection to SCBEST and serves in this case only to  report the SCBEST grades as being its own.  Defendant then knowingly credits these grades as if they were

---

9 Cmplt. ¶ 29; 2d Am. Cmplt  ¶ 29: "South Carolina State Board of Education Regulation R 43-273, effective December 26, 2003, Transfers and withdrawals ("Transfer Regulations") provides in part:  ". . . 3.  If a student transfers from a school, which is not accredited, he or she shall be given tests to evaluate prior academic work and/or be given a tentative assignment in classes for a probationary period."

Cmplt. ¶ 31; 2d Am. Cmplt ¶ 31: "SCBEST is not an accredited high school within the meaning of the Transfer Regulations."

Cmplt. ¶ 32; 2d Am. Cmplt ¶ 32: "Paragraph 3 of the Transfer Regulations controls the granting of academic credit for public high school grades for the SCBEST course and all other courses taught by unaccredited schools."

Oakbrook grades, thus evading the application of the Transfer Regulations.[10]

• Because defendant accepts SCBEST grades at face value and without further inquiry, a released time student may, either because of his or her religious prowess or possible academically unmerited grade inflation by SCBEST's teachers, qualify for a GPA-dependent LIFE Scholarship for which he or she would not otherwise have qualified, or obtain a GPA-influenced emolument such

---

[10] 2d Am. Cmplt ¶ 35: "Defendant and SCBEST and Oakbrook Preparatory School (Oakbrook), a private religious school located in Spartanburg, South Carolina, which is accredited within the meaning of the Transfer Regulations, have arranged for the grade assigned to released time students by SCBEST to be reported to defendant by Oakbrook as if it were an Oakbrook grade.  Upon information and belief there is little or no formal or substantive educational connection between Oakbrook Preparatory School and SCBEST."

2d Am. Cmplt ¶ 36: . . .

"(a)  the grades submitted by Oakbrook to defendant are treated by defendant as coming from Oakbrook and not from SCBEST and without further inquiry they are entered upon the student's official transcript and credited as satisfying an elective requirement and used to compute grade point averages;

(b)  in so doing Defendant ignores its knowledge that the SCBEST course is a sectarian and proselytizing and evangelical course and a course which could not be constitutionally taught in any public school in the United States and a course subject to Paragraph 3 of the Transfer Regulations; and

(c)  other unaccredited schools subject to application of Paragraph 3 of the Transfer Regulations are not allowed by defendant to have their grades transferred as coming from an accredited private school."

2d Am. Cmplt 37: "Upon information and belief the arrangement to have the SCBEST grade reported as if it were an Oakbrook grade was made and has been implemented with a purpose to evade, for the purpose of favoring sectarian, evangelical and proselytizing religious release time educational courses, the matters set forth in Paragraphs 29 through 36, above."

as a salutatorianship.  Cmplt. ¶ 36(a); 2d Am. Cmplt. ¶ 36(a).[11]

This course of conduct, objectively and reasonably considered, is an endorsement of religion.  It is not merely an accommodation.  No burden is removed from religious exercise.  *Zorach*-style released time courses can continue to be offered, but because interest in them was lagging, academic credit is now offered.  A special bonus is offered to encourage – not accommodate – released time.  This is done by evading otherwise controlling regulations.  This objectively shows favoritism and encouragement to religion.

This case is similar in its religious effect to *Larkin v. Grendel's Den*, 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed. 2d 297 (1982).  There a statute gave churches an effective veto power over applications for liquor licenses within a radius of 500 feet of the church, much as defendant here has given SCBEST an uncontrolled power to determine public school academic grades.  The Court held that this violated the "effect" prong of *Lemon* because the churches were given standardless power which could be exercised for religious reasons, 459 U.S. at 125, and because "the mere appearance of a joint exercise of legislative authority by Church and State provides a significant symbolic benefit to religion in the minds of some by reason of the power conferred."  459 U.S. at 125-25.  That analysis fits this

---

[11] "[T]he grades submitted by Oakbrook to defendant are treated by defendant as coming from Oakbrook and not from SCBEST and without further inquiry they are entered upon the student's official transcript and credited as satisfying an elective requirement and used to compute grade point averages."

case like a hand in a glove. Both reasons apply. The delegation to a religious entity of power to grant a public school grade is a standardless delegation that can be exercised for religiously discriminatory reasons, and symbolically it joins Church and State in responsibility for public education of children.

### 3. Defendant has excessively entangled itself with SCBEST by donating a governmental power to it.

Defendant's donation to a religious institution of its governmental power to give a public school academic grade excessively entangles it with religion.  In *Larkin v. Grendel's Den*, *supra*, 459 U.S. 116 (1982), the Court went on to hold that the statute offended the entanglement prong of the *Lemon* test quite apart from whether a reasonable observer would find a violation under the second prong. The Court first quoted from *Lemon, supra,* 403 U.S. at 625:

> Under our system, the choice has been made that government is to be entirely excluded from the area of religious instruction and *churches excluded from the affairs of government.*

459 U.S. at 126 (*Larkin* Court's emphasis).  The Court then adverted to the "core rationale" of the Establishment Clause, going back a century and a half to South Carolina law:

> The structure of our government has, for the preservation of civil liberty, rescued the temporal institutions from religious interference. On the other hand, it has secured religious liberty from the invasion of civil authority.  *Watson v. Jones*, 13 Wall. 679, 730, 20 L.Ed. 666 (1872), *quoting Harmon v. Dreher,* 1 Speers Eq. 87, 120 (S.C. App. 1843).

459 U.S. at 126. This meant that "[t]he Framers did not set up a system of government in which important, discretionary governmental powers would be delegated to . . . religious institutions." *Id.* Applying this core rationale to implementation of the statute, its delegation was held unconstitutional because it "substitute[d] the unilateral and absolute power of the church for the reasoned decisionmaking of a public legislative body acting on evidence and guided by standards, on issues with significant economic and political implications." 459 U.S. at 127.

Giving a high school grade is a discretionary governmental function. It involves evaluation and judgment. One grade can be the difference between getting and not getting a high school diploma. Defendant has given SCBEST complete power over what grade is to be given, even to the extent of allowing it to evade the requirements of the Transfer Regulations. SCBEST is free to give lower grades to minorities because of a belief that they can never fully understand true Christianity, or to give a student an "F" because she had a crisis of faith on the last day of class and realized that she was an unbeliever, or to give an "A+" for exceptional piety. Any of these actions would result in an unreviewable public school grade based on religion.

The principle that governmental power may not be donated to a religious

27

institution[12] is an aspect of the broader principle that governmental power may not be donated to any private institution or person. Our guiding aphorism is that we have a government of laws, not men. When governmental power is donated to private hands there is no legal process that can review its abuse and we have a government of men.

The strength of this principle was apparent in *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 U.S. 1210, 10 L.Ed. 2d 248 (1963). The Court upheld, by a 5-4 vote, a California regulation which regulated the sale of avocados in California based on their oil content. This regulation had the effect of excluding about 6 percent of Florida avocados from sale in California. Federal regulation of Florida avocados was based on factors other than their oil content. The Court upheld California's regulation against Commerce Clause and Supremacy Clause challenges, thus allowing a State regulation to interfere with a federal regulation. This anomalous result has been taken to derive from the Court's concern that the federal regulation had been drafted by the South Florida Avocado Administrative Committee, a private organization, thus raising the spectre of a delegation of federal power to local control. One distinguished commentator sees this result as reflecting the wide ambit of *Larkin's* principle.

---

[12] In *Allegheny County v. ACLU,* 492 U.S. 573, 590-91,109 S.Ct. 3086, 106 L.Ed 2d 472 (1989), the Court characterized *Larkin* as holding that "government may not . . . delegate a governmental power to a religious institution."

Tribe, *American Constitutional Law* (3d ed., 2000) § 5.19 at n. 49.

This brings us full circle to *Smith v. Smith, supra*, 523 F.2d 121, in which the Fourth Circuit so accurately foresaw the principle of *Larkin* when it observed that it was the donation of governmental power to a religious institution that explained the difference in result between *McCollum* and *Zorach.*

### 4. Defendant's exemption of SCBEST from the Transfer Regulations is an unconstitutional denominational preference.

The sectarian religion practiced by SCBEST is allowed to avoid the application of the Transfer Regulations. Other courses from unaccredited schools, religious and otherwise, must surmount the Transfer Regulations. Cmplt. ¶ 36(c); 2d Am. Cmplt. ¶ 36(c). In *Larson v. Valente,* 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed. 2d 33 (1982), a State statute regulated the solicitation of charitable contributions by religious organizations, but only if they received more that 50% of their contributions from non-members. This preferred more established churches over start-up congregations. Applying the compelling interest test to this discrimination among sects, the Court found it untenable under the Establishment Clause. Likewise in the present case no compelling interest exists for the discrimination in favor of SCBEST and against other unaccredited providers of religious courses.

## CONCLUSION

Because the Plaintiffs have demonstrated standing to maintain this action,

and have stated facts sufficient to support their claims, and for the various reasons set forth herein, Plaintiffs respectfully request that the Motion to Dismiss be DENIED.

CAPITOL COUNSEL, L.L.C.:

s/ Aaron J. Kozloski
D.S.C. Bar. No. 9510
Capitol Counsel
P.O. Box 11902
Capitol Station
Columbia, S.C. 29211
Tel:  803-748-1320
Fax:  888-513-6021
aaron@capitolcounsel.us

George Daly
(*pro hac vice*)
N.C. Bar No. 1071
139 Altondale Avenue
Charlotte  N.C.  28207
Tel:  704-333-5196
gdaly1@bellsouth.net

*Attorneys for Plaintiffs*

October 10, 2009
Columbia, South CArolina