IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Robert Moss, individually and as general guardian of his minor child; </br></br>Ellen Tillett, individually and as general guardian of her minor child; and </br></br>Freedom From Religion Foundation, Inc., a Wisconsin non-profit corporation, </br></br>　　　　Plaintiffs, </br></br>v. </br></br>Spartanburg County School District No. 7, </br></br>　　　　Defendant. | Case No. 7:09-cv-1586-HMH |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Eric C. Rassbach (admitted *pro hac vice*)
Lori H. Windham (admitted *pro hac vice*)
The Becket Fund for Religious Liberty
1350 Connecticut Ave., NW, Suite 605
Washington, DC 20036
erassbach@becketfund.org
lwindham@becketfund.org
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

Kenneth E. Darr, Jr. (Fed. I.D. #989)
Lyles, Darr, & Clark, LLP
104 N. Daniel Morgan Ave.
Suite 300
Spartanburg, South Carolina 29306
kdarr@ldclaw.com
Telephone: (864) 585-4806
Facsimile: (864) 585-4810

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

ARGUMENT ........................................................................................................................... 1

I.  Plaintiffs lack three of the four kinds of standing they claim. ............................................ 1

    A.  The Court must reject Plaintiff's taxpayer, "offended observer," organizational and associational standing, even if there is a possibility of "GPA standing." ..................................................................................... 1

    B.  *Zorach* and *Santa Fe* do not prevent this Court from analyzing standing. ........................................................................................................ 2

    C.  Plaintiffs lack "offended observer" standing. ............................................................ 3

    D.  Plaintiff FFRF lacks both organizational and associational standing. ..................................................................................................................... 5

II. The Court should reject Plaintiffs' Establishment Clause claim on the merits. .......................................................................................................................... 6

    A.  Plaintiffs have failed to allege facts supporting their legal conclusion that the School District acted with an "entirely religious purpose." ................................................................................................ 6

    B.  Plaintiffs' allegations fail to state a claim that the released time policy has the primary effect of advancing or endorsing religion. ....................................................................................................... 8

    C.  The released time policy does not foster "excessive government entanglement with religion." ............................................................... 14

    D.  The released time policy does not represent a "denomination preference." ........................................................................................ 14

CONCLUSION ..................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                    Page(s)

*Abington Township Sch. Dist.* v. *Schempp*,
   374 U.S. 203 (1963) .................................................................................................. 4

*Ayotte* v. *Planned Parenthood of N. New England*,
   546 U.S. 320 (2006) .................................................................................................. 3

*Davis* v. *FEC*,
   128 S. Ct. 2759 (2008)............................................................................................... 3

*Doe* v. *Human*,
   725 F. Supp. 1503 (W.D. Ark. 1989) ...................................................................... 10

*Hein* v. *Freedom From Religion Foundation*,
   551 U.S. 587 (2007) .................................................................................................. 6

*Hibbs* v. *Winn*,
   542 U.S. 88 (2004) .................................................................................................... 3

*Int'l Primate Prot. League* v. *Inst. for Behavioral
Research, Inc.*,
   799 F.2d 934 (4th Cir. 1986) .................................................................................... 5

*INS* v. *St. Cyr*,
   533 U.S. 289 (2001) ................................................................................................13

*Lambeth* v. *Bd. of Comm'rs of Davidson Cy.*,
   407 F.3d 266 (4th Cir. 2005) .................................................................................... 7

*Lanner* v. *Wimmer*,
   662 F.2d 1349 (10th Cir. 1981) ...................................................................... 9, 10, 11

*Larkin* v. *Grendel's Den*,
   459 U.S. 116 (1982) ...................................................................................... 10, 11, 14

*Lewis* v. *Casey,*
   518 U.S. 343 (1996) .................................................................................................. 3

*Lujan* v. *Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................. 2

*McCollum* v. *Board of Education*,
   333 U.S. 203 (1948) ..................................................................................................9

*Northwestern School Dist.* v. *Pittenger*,
    397 F. Supp. 975 (W.D. Pa. 1975) .................................................................................. 3

*Robinson* v. *American Honda Motor Co.*,
    551 F.3d 218 (4th Cir. 2009) ........................................................................................... 7

*Santa Fe Indep. Sch. Dist v. Doe*,
    530 U.S. 290 (2000) ......................................................................................................... 3

*Smith* v. *Smith*,
    523 F.2d 121 (4th Cir. 1975) .............................................................................. 7, 9, 10, 11

*Steel Co.* v. *Citizens for a Better Environment,*
    523 U.S. 83 (1998) ............................................................................................................ 3

*Suhre* v. *Haywood County*,
    131 F.3d 1083 (4th Cir. 1997) ......................................................................................... 4

*United States* v. *L.A. Tucker Truck Lines, Inc.*,
    344 U.S. 33 (1952) ............................................................................................................ 3

*Valley Forge Christian Coll.* v. *Americans United*
*for Separation of Church and State, Inc.*,
    454 U.S. 464 (1982) ......................................................................................................... 3

*Will* v. *Michigan Dept. of State Police*,
    491 U.S. 58 (1989) ............................................................................................................ 3

*Zelman* v. *Simmons-Harris*,
    536 U.S. 639 (2002) ....................................................................................................... 13

*Zorach* v. *Clauson*,
    343 U.S. 306 (1952) .................................................................................................. 2, 8, 9

**Statutes**                                                                                                                    **Page(s)**

S.C. CODE ANN. § 2-77-15(1)(c) ............................................................................................ 11

S.C. CODE ANN. § 59-39-112 ..................................................................................... 7, 12, 14

**Other Authorities**

2007 OP. S.C. ATT'Y GEN. (Jan. 29, 2007)
    available at 2007 WL 419400 ......................................................................................... 13

Accreditation Standards for Quality Schools ............................................................................ 14

SACS CASI Policy II, 2.02(f)................................................................................................ 13

**Regulations**

S.C. St. Bd. Of Educ. R. 43-273 ....................................................................................... 12

After twice amending their complaint, Plaintiffs still lack standing to bring most of their lawsuit, and they still fall far short of stating a claim for relief under the Establishment Clause. The Court should dismiss Plaintiffs' Establishment Clause claim with prejudice.[1]

## ARGUMENT

### I.  Plaintiffs lack three of the four kinds of standing they claim.

The School District's motion to dismiss argued that Plaintiffs clearly lack three of the four forms of standing they rely on. Mem. 8–20. In response, Plaintiffs tacitly concede that they lack taxpayer standing by failing to respond to the School District's explanation why Plaintiffs' taxpayer allegations do not support standing. Mem. 10–15. This concession significantly narrows the scope of the lawsuit, since funding is no longer an issue. Plaintiffs' remaining claims of "offended observer," organizational, and associational standing should likewise be dismissed, further narrowing the issues in the case.

### A.  The Court should reject Plaintiffs' taxpayer, "offended observer," organizational and associational standing, even if there is a possibility of "GPA standing."

Plaintiffs first argue that this Court need not examine standing because the School District "has conceded that plaintiffs Moss and Tillett have standing." Plaintiff's Oppostion to Motion to Dismiss, Dkt. 30 ("Opp.") 6–7. The School District has not (and cannot) concede "GPA standing"; it has said only that currently there are not enough facts to challenge Plaintiffs' allegation that their children have suffered a loss in class rank due to SCBEST's program. Mem. 9. The existence of such "GPA standing" depends on whether Plaintiffs can develop facts supporting standing later in the litigation. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561

---

[1] The School District's memorandum in support of its motion to dismiss, Dkt. 19 ("Mem."), responded to the original complaint. Before responding to the motion to dismiss, Plaintiffs amended their complaint twice, including a new Equal Protection claim not at issue here. *See* Second Amended Complaint, Dkt. 27 ("2d Am. Cmpt.") ¶ 43. The School District anticipates

1

(1992) (plaintiff bears the burden of proving standing "with the manner and degree of evidence required at the successive stages of the litigation").

The potential existence of GPA standing, however, does *not* relieve this Court from ruling on the Plaintiffs' other alleged bases of standing.  As the Supreme Court has explained, "a plaintiff must demonstrate standing for **each** claim he seeks to press and for **each** form of relief that is sought."  *Davis* v. *FEC*, 128 S. Ct. 2759, 2769 (2008) (emphases added); *see also Lewis* v. *Casey,* 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."); Mem. 9–10.  Here, the scope of Plaintiffs' claims and the form of appropriate relief turn on the basis (if any) of Plaintiffs' standing.  For example, if Plaintiffs' only cognizable injury is harm to GPA, then the appropriate form of relief is not an order declaring the entire released time program unconstitutional; it is an order requiring the School District to operate the program in a manner that does not harm other students' GPAs.  *See Ayotte* v. *Planned Parenthood of N. New England*, 546 U.S. 320, 323 (2006) (where courts are "able to render narrower declaratory and injunctive relief" they must do so.)  A ruling on Plaintiffs' other alleged bases of standing would thus significantly narrow the issues in this case.

      **B.**    *Zorach* **and** *Santa Fe* **do not prevent this Court from analyzing standing.**

Plaintiffs also claim that they have standing because, like the plaintiffs in *Zorach*, they are "parents of children currently attending schools subject to a released time program of religious instruction."  Opp. at 7–8.  *Zorach*, however, never analyzed standing; it observed in passing—in a one-sentence footnote—that there was no "problem of this Court's jurisdiction" as there was in *Doremus* (a taxpayer standing case decided just two months earlier).  *Zorach* v. *Clauson*, 343 U.S. 306, 310 n.4 (1952).  The Supreme Court has repeatedly warned against relying on "drive-by jurisdictional rulings" of this sort.  *See, e.g., Steel Co.* v. *Citizens for a*

---

filing a separate motion to dismiss the new Equal Protection claim.

*Better Environment,* 523 U.S. 83, 92 (1998) (collecting cases). Specifically, lower courts are "not bound by a prior exercise of jurisdiction in a case where [jurisdiction] was not questioned and it was passed *sub silentio.*" *Hibbs* v. *Winn*, 542 U.S. 88, 127 (2004) (quoting *United States* v. *L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952)); *see also Will* v. *Michigan Dept. of State Police*, 491 U.S. 58, 63 n.4 (1989) ("[T]his Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us." (citation omitted)). This is particularly true where the Court has refined the relevant jurisdictional standards in subsequent cases. *See Valley Forge Christian Coll.* v. *Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 486–87 (1982) (mere offense did not create standing). Thus, it is no surprise that 23 years passed before any court cited *Zorach*'s passing reference to jurisdiction, *Northwestern Sch. Dist.* v. *Pittenger*, 397 F. Supp. 975 (W.D. Pa. 1975), and *no court* has cited it since.[2] The passing reference to jurisdiction in *Zorach*, therefore, does not relieve Plaintiffs of proving a concrete injury under controlling Article III standards.[3]

### C. Plaintiffs lack "offended observer" standing.

In its memorandum, the School District demonstrated that under controlling Article III standards, Plaintiffs cannot establish standing as "offended observers" because mere knowledge of a government policy cannot constitute an Article III injury, most of the injuries they claim (*e.g.*, public criticism) are not state action, the injuries are not traceable to the School District,

---

[2] *Zorach* was also different because the parents (and the dissent) claimed that the released time program was not merely offensive but inherently "coercive," pressuring children to choose religious instruction. 343 U.S. at 315–24. The alleged coercion stemmed from the fact that, during released time, all other classroom activities "c[a]me to a halt," forcing children to choose between religious instruction and the "temporary jail" of idleness. 343 U.S. at 309; *id.* at 324 (Jackson, J., dissenting). Here, by contrast, classroom activities do not stop during released time, and Plaintiffs have made no allegations of coercion.

[3] The same is true of Plaintiffs' reliance on *Santa Fe Indep. Sch. Dist* v. *Doe*, 530 U.S. 290 (2000). Opp. 10–11. As Plaintiffs concede, *Santa Fe* says nothing about standing.

3

and the alleged injuries aren't redressable. Mem. 15–18. In response, Moss and Tillett have added allegations that "[e]ach plaintiff feels less welcome at and about Spartanburg High School and the offices of defendant" because of the SCBEST letter, the summary dismissal of their concerns, and their knowledge of the existence of the released time policy. 2d Am. Cmpt. ¶ 10.

These new allegations are insufficient for the same reason the old ones were. "Offended observers" must allege "direct unwelcome contact" with the religious display *itself*. *See, e.g. Suhre* v. *Haywood County*, 131 F.3d 1083, 1085 (4th Cir. 1997) (plaintiff saw Ten Commandments posted on courtroom wall); *Abington Township Sch. Dist.* v. *Schempp*, 374 U.S. 203 (1963) (students witnessed classroom prayer). The "offensive contact" Moss and Tillett complain of is not with a religious display or classroom prayer, but with the released time policy itself. They cite no case—and undersigned counsel is aware of none—where mere knowledge that a government policy exists constitutes "direct unwelcome contact." And with good reason. Under this absurd theory, any disputed government policy Plaintiffs hear about would be fair game. For example, Plaintiffs could sue the School District solely because they have knowledge of a policy that allows their classmates to be absent for religious holidays. The Court should reject Plaintiffs' attempt to equate School District policies with religious displays.

Plaintiffs make little effort to meet their burden of demonstrating traceability and redressability, devoting less than two pages to these elements and citing no cases. Opp. 14–15. On redressability, Plaintiffs discuss only the "central unwelcome injury" of "defendant's allowing academic grades to be given for a sectarian religious time course." Opp. 15. Plaintiffs thus tacitly concede that the SCBEST letter cannot be unsent, the adverse public comments cannot be unspoken, and the School District cannot go back in time and allow Moss to speak more freely at the School Board meeting.

On traceability, Plaintiffs now allege, on information and belief, that the unredressable letter was "approved" by the School District. 2d Am. Cmpt. ¶ 9(a). Even if this speculation were true, it does not make SCBEST's letter state action, any more than the School District's approval of a letter to parents from the PTA or the Girl Scouts would be. Plaintiffs have failed to demonstrate all three necessary elements of standing under *Lujan*.

### D.     Plaintiff FFRF lacks both organizational and associational standing.

In its memorandum, the School District explained that FFRF lacks both organizational and associational standing because it had not identified any injury to itself and had not alleged facts sufficient to support standing for any of its individual members. Mem. 20–22. In response, Plaintiffs added allegations that FFRF "seeks to protect interests that are germane to its purpose as an organization," and that FFRF members "reside within the jurisdiction of the defendant" including one of the parent plaintiffs. 2d Am. Cmpt. ¶ 14.

FFRF has still failed to allege anything more than a philosophical disagreement with the School District. "'[A] mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself' to create standing." *Int'l Primate Prot. League* v. *Inst. for Behavioral Research, Inc.,* 799 F.2d 934, 938 (4th Cir. 1986) (quotation omitted). FFRF does not have organizational standing.

FFRF has also failed to demonstrate associational standing. Even if Moss or Tillett (whichever happens to be a FFRF member) had standing, FFRF would not, since associational standing is inapplicable if the members with standing are already parties. *See* Mem. 21 n.16. Nor does FFRF have associational standing based on other members that "reside within the jurisdiction of defendant" and "have standing to sue in their own right." 2d Am. Cmpt. ¶ 14. FFRF does not allege that these members are taxpayers; that they have come into "offensive

5

contact" with a religious practice; or that they have children in the School District. *See, generally,* 2d Am. Cmpt. The only allegation is that these members are "opposed to government endorsement of religion and violations of the Establishment Clause of the First Amendment." *Id.* ¶ 14. But mere disagreement with government policies is insufficient to confer standing. *See, e.g., Hein* v. *Freedom From Religion Foundation,* 551 U.S. 587, 601 (2007) (noting the "basic constitutional principle that 'a plaintiff raising only a generally available grievance about government . . . does not state an Article III case or controversy.'" (citation omitted)). FFRF should be dismissed from the lawsuit.

## II.     The Court should reject Plaintiffs' Establishment Clause claim on the merits.

Plaintiffs also fail to state a claim for relief under the Establishment Clause. Indeed, ***Plaintiffs fail to cite a single post-*Zorach** *case striking down a released time program under the Establishment Clause***, let alone a program as neutrally implemented as the one challenged here. Moreover, several cases squarely reject Plaintiffs' theories as a matter of law.

### A.     Plaintiffs have failed to allege facts supporting their legal conclusion that the School District acted with an "entirely religious purpose."

First, Plaintiffs claim that the released time program is unconstitutional because it was implemented "for an entirely religious purpose."[4] Opp. 17; 2d Am. Compl. ¶ 25. In support of this legal conclusion, Plaintiffs allege four facts: (1) The School District "knew prior to adopting the Policy that SCBEST intended to teach . . . an evangelical and sectarian and proselytizing course of religious instruction"; (2) "such a course has in fact been taught"; (3) the course receives public school credit; and (4) the program "aid[s] SCBEST in the fulfillment of its religious mission." Opp. 18 (quoting 2d Am. Cmpt. ¶¶ 24, 25, 27, 38).

Construed in the light most favorable to Plaintiffs, these facts do not even begin to meet

---

[4]     This is a legal conclusion entitled to no deference in response to a Rule 12(b)(6) motion. *See*

the high standard for proving the government was "entirely motivated by a purpose to advance religion." *See Lambeth* v. *Bd. of Comm'rs of Davidson Cy.*, 407 F.3d 266, 270 (4th Cir. 2005) (noting that finding a legitimate *secular* purpose is "a fairly low hurdle").

Most importantly, this argument is squarely foreclosed by the Fourth Circuit's decision in *Smith* v. *Smith*, 523 F.2d 121 (4th Cir. 1975). There, the Court held that "[t]he purpose of the [challenged] release-time program, like the *Zorach* program, is secular [because] the schools aim only to accommodate the wishes of the students' parents." *Id.* at 124. The facts in *Smith* were indistinguishable from those alleged here: The school district knew that the Weekday Religious Education courses were religious (*id.* at 122); such courses were, in fact, taught (*id.*); and the program plainly "advance[d] WRE's [religious] program" (*id.* at 124). Indeed, the program in *Smith* arguably had more troubling facts: The program was directed at impressionable elementary school children (*id.*); it was utilized by the vast majority of students in regular school classes (*id.* at 122); and it offered no alternative instruction for the "small minority" of students left behind (*id.*). Yet the Fourth Circuit still found the program to have a secular purpose. Incredibly, in the portion of its Response claiming an entirely religious purpose, Plaintiffs do not even *mention*, much less distinguish, *Smith*. Opp. 17–20.

The mere fact that the School District awards credit for released time courses does not distinguish this case from *Smith*. *Cf.* Opp. 18–20. The Released Time Credit Act allows school districts to offer credit solely "to accommodate parents' and students' desires to participate in released time programs" (2d Am. Cmpt. ¶ 18 (quoting 2006 S.C. ACTS 322, encoded at S.C. CODE ANN. § 59-39-112); Opp. 19)—the very purpose affirmed in *Smith*. 523 F.2d at 124. The School District's released time policy does the same. 2d Am. Cmpt. ¶ 23. Offering credit

---

*Robinson* v. *American Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009).

7

merely ensures that students who elect to participate in released time are treated no worse than students who do not. Indeed, offering elective credit for released time classes allows the School District to offer other elective classes at the same time to students who remain, thus *avoiding* the situation found problematic by the *Zorach* dissent—namely, trapping students who decline released time in a "temporary jail" of unused class time. 343 U.S. at 324 (Jackson, J., dissenting). In short, offering credit serves the constitutionally laudable goal of treating released time and non-released time students equally while accommodating parents' desires.

Finally, other courts have consistently (and easily) rejected Plaintiffs' "religious purpose" argument, finding that released time programs—including those offered for public school credit—have a legitimate secular purpose.[5] Plaintiffs make no attempt to distinguish these cases. Their claim that the School District acted with "an entirely religious purpose" (Opp. 17) is foreclosed as a matter of law.

**B.     Plaintiffs' allegations fail to state a claim that the released time policy has the primary effect of advancing or endorsing religion.**

Next, Plaintiffs claim that the released time policy impermissibly endorses religion. Opp. 20–26. Conceding that "*Zorach*-type classes" are constitutional (Opp. 21), Plaintiffs attempt to distinguish *Zorach* based on three facts: (1) South Carolina authorized "academic credit" for released time classes after interest in those classes had waned (Opp. 22; 2d Am. Cmpt. ¶ 18(5)); (2) academic credit is permitted only if released time classes satisfy the secular criteria used in the South Carolina's "Transfer Regulations" (Opp. 22–23; 2d Am. Cmpt. ¶¶ 29–

8

30); and (3) in order to satisfy the Transfer Regulations, the School District requires SCBEST to submit its grades for approval to an accredited religious school, Oakbrook Preparatory School, and then treats those grades as coming from Oakbrook (a process Plaintiffs call "evading" the Transfer Regulations) (Opp. 22–25; 2d Am. Cmpt. ¶¶ 29–36). According to Plaintiffs, these facts establish an impermissible endorsement of religion because they "show delegation of public school teachers' governmental authority to a religious organization." Opp. 21.

Construing the facts in the light most favorable to Plaintiffs, this argument fails as a matter of law for several independent reasons. *First*, Plaintiffs' argument is based on an erroneous reading of the Fourth Circuit's decision in *Smith*. According to Plaintiffs, *Smith* turns on "whether the religious teachers took over a position of authority held by the public school teacher." Opp. 21. Because grading is part of a teacher's authority, say the Plaintiffs, granting credit for released time violates *Smith*. *Id.*

But *Smith* says no such thing. Instead, *Smith* plainly says that the "crucial distinction" between *McCollum* and *Zorach* is whether or not released time classes are conducted off-site:

> [I]n *McCollum*, the public school *turned its classrooms over to the religious instructors*; in *Zorach*, the schools only adjusted their schedules to accommodate the religious needs of the people. In the instant case, the accommodations of the school program to religious training were generous and thorough-going, but *the public school classrooms . . . were not turned over to religious instruction*. **Therefore, the case is indistinguishable from and controlled by Zorach**.

523 F.2d at 123–24 (emphasis added; internal citations and quotations omitted).

This "classroom distinction" makes sense because turning over the classroom to a

---

5  *See, e.g.*, *Zorach,* 343 U.S. at 313–14 ("When the state encourages religious instruction or cooperates with religious authorities by adjusting the schedule of public events to sectarian needs, it follows the best of our traditions. For it then respects the religious nature of our people and accommodates the public service to their spiritual needs."); *Smith*, 523 F.2d 121 at 124 ("The purpose of the Harrisonburg release-time program, like the *Zorach* program, is secular— the schools aim only to accommodate the wishes of the students' parents."); *Lanner* v. *Wimmer*, 662 F.2d 1349, 1357 (10th Cir. 1981) ("The School Board's desire to accommodate the public in

9

religious instructor powerfully associates the religious instructor with the state.[6]  The same cannot be said of religious teaching off-site—including religious teaching that results in a grade.

Here, it is undisputed that public school classrooms are never turned over to religious instruction.  *See, e.g.,* 2d Am. Cmpt. ¶ 23 ("Religious instruction must take place away from school property and at a regularly designated location" (quoting released time policy)), ¶ 28 ("The released time course . . . could not be taught in a public high school . . ."), ¶ 34 (". . . no such course could be taught in a public high school . . .").  Under *Smith*, then, the School District's policy is constitutional.

*Second*, Plaintiffs' argument is woefully unsupported by precedent.  After three pages of factual allegations (Opp. 22–24), Plaintiffs' entire legal argument consists of just two paragraphs (Opp. 25–26).  In that argument, **Plaintiffs fail to cite a single case striking down a released time policy on endorsement grounds; nor do Plaintiffs offer any argument distinguishing the many cases upholding released time policies against an endorsement challenge.**  Instead, Plaintiffs rely exclusively on *Larkin* v. *Grendel's Den*, 459 U.S. 116 (1982), a case far afield from this one.  There, a state law gave churches standardless discretion to veto any application for a liquor license within a 500 foot radius of the church.  The Supreme Court struck down the law as an impermissible advancement of religion because it: (1) "confer[red] upon churches a veto power over governmental licensing authority"; (2) "g[ave] churches the right to determine [the legal rights of third parties]"; and (3) made the churches' power under the law

---

its spiritual needs satisfies the secular legislative purpose prong of the test.").

[6] Not surprisingly, other courts have read *Zorach* and *McCollum* as based on the same classroom distinction.  *See, e.g.*, *Lanner*, 662 F.2d at 1352 ("[I]t is clear that released-time programs permitting attendance at religious classes *off school premises* do not per se offend the establishment and free exercise clauses."); *Doe* v. *Human*, 725 F. Supp. 1503, 1507 (W.D. Ark. 1989) ("[I]f an evidently religious study *is taught on school grounds* during regular school hours, the school is excessively entangled in it regardless of who teaches such classes.") (emphases

"standardless." *Id.* at 125.

All of those key facts are missing here: (1) the giving of grades is not an exercise of legislative or licensing authority; (2) released time teachers have no authority over the legal rights of third parties, and can only issue grades to those who voluntarily take the course; and (3) far from standardless discretion, released time courses are eligible for credit only if they satisfy "purely secular criteria" embodied in the Transfer Regulations. The only legal authority relied on by Plaintiffs, then, is simply inapplicable.[7]

Not only is *Larkin* inapplicable, but Plaintiffs also flatly ignore a large body of contrary precedent. *See., e.g., Smith*, 523 F.2d 125 ("[T]he primary effect of the public school's release-time program in *Zorach* must be seen as simply the innocuous diminishing of the number of children in school at a certain time of day."); *Lanner*, 662 F.2d at 1359 ("The primary effect … is simply to make the school's administration of the released-time system convenient and to avoid unnecessary conflicts with school classes and activities.").

*Third*, Plaintiffs' argument is based on an erroneous interpretation of the relevant South Carolina laws and regulations. Plaintiffs repeatedly refer to the relationship between the School District, SCBEST, and Oakbrook Preparatory School as an attempt to "evade" the Transfer Regulations. Opp. 23–24 & n.10, 25, 27. But Plaintiffs' allegations show nothing but a good-faith (and successful) attempt by the School District to *comply* with those Regulations.

---

added).

[7] The (il)logic of Plaintiffs' argument also calls into question many other plainly constitutional arrangements. For example, every time a South Carolina student transfers from an accredited religious school to a public school, any credits satisfying the Transfer Regulations are treated as "public school grades." *See* SACS CASI Policy II, 2.02(f), *available at* http://www.advanc-ed.org/accreditation/school_accreditation/policies_and_procedures/. Public schools and private schools in South Carolina are both accredited by the Southern Association of Colleges and Schools ("SACS"). *See e.g.*, S.C. CODE ANN. § 2-77-15(1)(c). Religious schools thus routinely receive delegated power "to grant a public school grade." But under Plaintiffs' argument, this

Plaintiffs' error stems in part from their belief that "[t]he Released Time Credit Act requires that academic credit given for released time religious education classes be determined *under the Transfer Regulations* . . . ." Opp. 22–23 (emphasis added); 2d Am. Cmpt. ¶ 30. According to Plaintiffs, the Transfer Regulations require rigid adherence to one of two methods of evaluating credits: (1) "tests to evaluate the SCBEST course academically," or (2) "probationarily assigning the student to a comparable class." Opp. 23. Plaintiffs claim that both methods would be unconstitutional; thus, the School District must "evade" the regulations.

Plaintiffs' argument is based on two legal errors about the relationship between the Released Time Credit Act and the Transfer Regulations. First, the Released Time Credit Act does not (as Plaintiffs claim) require courses to be evaluated directly "under the Transfer Regulations"; rather, it says that released time courses shall be evaluated "on the basis of secular criteria that are *substantially the same criteria*" as those in the Transfer Regulations. 2d Am. Cmpt. ¶ 18 (quoting 2006 S.C. ACTS 322, encoded at S.C. CODE ANN. § 59-39-112) (emphasis added). Thus, the Act specifically contemplates flexibility in how released time courses are evaluated, as long as substantially the same criteria are used.

Second, Plaintiffs claim that the only options available under the Transfer Regulations are a test to evaluate the SCBEST course academically, or an assignment of the student to a comparable class. Opp. 23. But those are the rules applicable to transfer from an unaccredited "school." *See* 2d Am. Cmpt. ¶ 29 (quoting S.C. ST. BD. OF EDUC. R. 43-273). The Transfer Regulations provide an alternative mechanism for approving credits from an accredited "school." But, of course, SCBEST is neither an accredited nor an unaccredited "school." Its courses fall somewhere in between: Unlike courses from an unknown, unaccredited school, they are

---

exceedingly common, nationwide practice would be unconstitutional.

approved by the School District in advance and evaluated based on secular criteria; but unlike courses from an accredited school, they have not been evaluated by an outside accrediting body.

Faced with the flexibility inherent in the Released Time Credit Act and the fact that the Transfer Regulations do not cover courses unassociated with a "school," the School District made a perfectly permissible choice: It receives grades from SCBEST's released time course from an accredited private school (Oakbrook Preparatory Academy). This arrangement ensures that SCBEST's courses will be rigorously evaluated (receiving the same scrutiny as any other course conducted at an accredited school), but without any intrusive inquiry on the part of the School District. As the School District explained in its original memorandum, this arrangement does not raise Establishment Clause concerns, but dispels them. Mem. 30–34.

Other than vague accusations that this arrangement is "evasive," Plaintiffs offer no concrete factual allegations or legal arguments for why this arrangement is unlawful. Indeed, if the School District's interpretation of the relevant statute and regulations is merely ***possible*** (and it certainly is), this Court must reject Plaintiffs' position. "[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' [the Court is] obligated to construe the statute to avoid such problems." *INS* v. *St. Cyr*, 533 U.S. 289, 299–300 (2001). Plaintiffs' construction would invalidate not only the School District's implementation of its released time policy, but *all* applications of the Released Time Credit Act across South Carolina. Such a result is not only unnecessary, it is foreclosed by the text of the Act and Transfer Regulations.[8]

---

[8]    The Attorney General has concluded that the Released Time Credit Act is constitutional. 2007 OP. S.C. ATT'Y GEN. (Jan. 29, 2007), *available at* 2007 WL 419400 ("as long as any decision to award Carnegie credits is made consistent with such secular requirement, the provisions of the 'Released Time Credit Act' may be upheld").

13

### C.    The released time policy does not foster "excessive government entanglement with religion."

For similar reasons, Plaintiffs' allegations fail to establish that the School District has "excessively entangled" itself with SCBEST by "donating" governmental authority to assign a public school grade. Opp. 26–27.  Much of this argument consists of unfounded speculation that SCBEST might award grades based on religious criteria.  Opp. 27.  But South Carolina law and the School District's released time policy expressly *forbid* SCBEST from engaging in such conduct, as any award of credit must be supported "on the basis of purely secular criteria." 2d Am. Cmpt. ¶ 18 (quoting 2006 S.C. ACTS 322, encoded at S.C. CODE ANN. § 59-39-112); *id.* at 23 (quoting School District's released time policy).  Also, because the grades ultimately come from Oakbrook Preparatory School after it evaluates the classes, Oakbrook would risk its own accreditation by approving such practices.[9]

The factual baselessness of Plaintiffs' argument is matched only by the argument's lack of legal support.  Other than *Larkin* v. *Grendel's Den*, which as noted above is easily distinguishable, Plaintiffs only other putative legal support comes from an irrelevant case about interstate avocado regulation.  Opp. 28.  Notably absent from this argument—like Plaintiffs' other arguments—is any case striking down as unconstitutional a released time program.

### D.    The released time policy does not represent a "denomination preference."

Finally, Plaintiffs claim that the School District has shown an "unconstitutional denomination preference" by allowing SCBEST to associate with Oakbrook under the Transfer Regulations.  Plaintiffs' theory on this score hinges on its erroneous legal interpretation of the

---

[9] *See* Accreditation Standards for Quality Schools at 14, http://www.advanc-ed.org/accreditation/standards/advanced_school_standards.pdfevaluates (accreditation standard requires school to "[e]stablish[ ] performance measures for student learning that yield information that is reliable, valid, and bias free.")

Transfer Regulations, rebutted above. But even assuming Plaintiffs' interpretation were correct, Plaintiffs offer no factual allegation or legal argument for concluding that the School District would deny similar treatment to other providers of released time courses. Without identifying a similarly situated group that has been treated less favorably, Plaintiffs' argument fails.

## CONCLUSION

For the foregoing reasons and those presented in Defendant's Memorandum in Support of its Motion to Dismiss, Plaintiffs' Establishment Clause claim should be dismissed with prejudice.

Respectfully Submitted,

/s/Kenneth E. Darr, Jr.
Kenneth E. Darr, Jr. (Fed. I.D. #989)
Lyles, Darr & Clark, LLP
104 N. Daniel Morgan Ave., Suite 300
Spartanburg, South Carolina 29306
kdarr@ldclaw.com
Telephone: (864) 585-4806
Facsimile: (864) 585-4810

Eric C. Rassbach (admitted *pro hac vice*)
Lori H. Windham (admitted *pro hac vice*)
The Becket Fund for Religious Liberty
1350 Connecticut Ave., NW, Suite 605
Washington, DC 20036
erassbach@becketfund.org
lwindham@becketfund.org
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

Attorneys for Defendant
Spartanburg County School District No. 7

October 22, 2009
Spartanburg, South Carolina