United States District Court
for the
District of South Carolina
Spartanburg Division

Robert Moss, individually and as ) 
general guardian of his minor child, ) 
et al., ) 
              Plaintiffs ) 
   ) 
Vs. )    Civil Action No. 7:09-CV-1586-HMH
   ) 
Spartanburg School District No. 7, ) 
   ) 
         Defendant ) 

## [proposed] PLAINTIFFS' SURREPLY MEMORANDUM

## TABLE OF CONTENTS

1A.[1]  The constitutionality of the South Carolina Released Time Credit
    Act is not an issue in this case       1

1B.  Defendant's practice of giving academic credit for released time
    religious education offends the Establishment Clause       1

IC.  Plaintiffs do not seek any remedy with respect to accredited
    religious schools       6

---

[1] Plaintiffs' numbering system tracks that used by Defendant in its Reply Memorandum, dkt. 35.

i

# TABLE OF AUTHORITIES

<u>Cases</u>

*Board of Education v. Allen*, 392 U.S. 236, 88 S.Ct. 1923,    4
        20 L.Ed. 2d 1060 (1968)

*Lanner v. Wimmer*, 662 F. 2d 1349 (10th Cir. 1981)    1,2, 3, 4, 6

*Larkin v. Grendel's Den,* 459 U.S. 116, 103 S.Ct. 505,    6
        74 L.Ed. 2d 297 (1982)

*McCollum v. Board of Education*, 333 U.S. 203, 68 S.Ct. 461,    5
        92 L.Ed. 649 (1948)

*Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 511,
        69 L.Ed. 1070 (1925)    4

*Smith v. Smith,* 523 F. 2d 121 (4th Cir. 1975)    6

*Zorach v. Clauson*, 343 U.S. 306, 72 S.Ct. 679,
        96 L.Ed. 954 (1952)    6

## ARGUMENT

### 1A.  The constitutionality of the South Carolina Released Time Credit Act is not an issue in this case

Defendant argues that plaintiffs have implicitly amended their lawsuit to challenge the constitutionality of the South Carolina Released Time Credit Act ("Act").  It contends that plaintiffs have in their recent briefs "come clean and admitted that the goal of the lawsuit is to have this Court declare the . . . Act unconstitutional."  Defendant's Reply Memorandum ("Reply Mem."), dkt. 35, at 1. This fanciful argument has no support in the pleadings.  The prayer for relief of the Second Amended Complaint is:

> ACCORDINGLY, plaintiffs respectfully pray that the Court issue its Judgment declaring that defendant's practice of granting public school academic credit for proselytizing, evangelical and sectarian religious released time education courses is unconstitutional . . ."

It is hard to see how the Court could declare the Act unconstitutional when no such relief is prayed.

### 1B.  Defendant's practice of giving academic credit for released time religious education offends the Establishment Clause

Defendant now relies on *Lanner v. Wimmer*, 662 F. 2d 1349 (10th Cir. 1981) as authority for its new Establishment Clause argument.  In *Lanner* high school students were released to attend a Mormon seminary for religious education, pursuant to a Utah State Board of Education policy that provided:

> Credits for work taken in release time classes should be recognized by public schools. . . upon evaluation on the same basis that similar credits from established private high schools are evaluated.  The State Board has authorized high schools to recognize not to exceed two credits of Bible history for work taken in private seminaries or schools. Such credit may be counted as an "elective" but may not fill any requirements in the fields of social studies, English or literature. No credit is to be given to courses devoted mainly to denominational instruction.

*Lanner v. Wimmer*, *supra,* 662 F. 2d at 1360.  The seminary grades were "record[ed] by the public school" but not "recorded on a student's public school report card."  662 F. 2d at 873.  There is no indication that they were used to compute grade point averages.

The District Court enjoined the school board's practice of granting "credit" for completion of courses that it found to be denominational.  On appeal the Circuit Court parsed the "credit" enjoined by the District Court into four types:  "elective credit," "custodial credit," "eligibility credit," and "funding credit."  "Elective credit" referred to the 7.5 elective units required to graduate.  662 F.2d at 1360. "Custodial credit" measured "satisfaction of the general compulsory school attendance requirement."   662 F. 2d 1362.  "Eligibility credit" referred to the requirement that a student obtain six "credit" hours to be eligible for certain extracurricular activities. *Ibid.*  "Funding credit" measured "the school's eligibility for financial aid." *Ibid.*

2

Plaintiffs in the case at bar challenge the granting of "academic credit," a term not used in *Lanner*. *See,* Second Amended Complaint, prayer for relief. This is more specifically described in ¶ 36(a) of the Second Amended Complaint as "grades" being used "as satisfying an elective requirement" and being "used to compute grade point averages." *See also* ¶¶ 11, 26 and 27. Plaintiff's thus challenge both "elective credit," as used in *Lanner*, and academic grade credit, which *Lanner* did not discuss.

The Circuit Court affirmed the injunction as to elective credit but reversed it as to the other types of credit. The basis of the Circuit Court's affirmance of the injunction as to elective credit was that the State Board Policy required inquiry into religious doctrine. 662 F.2d at 1361-62. This required that the last sentence of the State Board policy, *quoted supra,* p. 2, be disregarded. The remainder of the policy then authorized two credits for Bible history and authorized evaluation "on the same basis that similar credits from established private high schools are evaluated." Bible history being presumably a secular subject (similar to the apparently secular and correspondingly highly regulated "Old and New Testament era courses" provided for by S.C. Code § 59-29-230), it presents an issue of State regulation of secular credits earned at religious schools.

*Board of Education v. Allen*, 392 U.S. 236, 245-46, 88 S.Ct. 1923, 20 L.Ed.

2d 1060 (1968), discusses the extent of State power to regulate secular education at

religious schools.

> In the leading case of *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct.
> 511, 69 L.Ed. 1070 (1925), the Court held that, although it would not
> question Oregon's power to compel school attendance or require that that the
> attendance be at an institution meeting State-imposed requirements as to
> quality and nature of curriculum, Oregon had not shown that its interest in
> secular education required that all children attend publicly operated schools.
> A premise of this holding was the view that the State's interest in education
> would be sufficiently served by reliance on the secular teaching that
> accompanied religious training in the schools maintained by the Society of
> Sisters.  Since *Pierce,* a substantial body of case law has confirmed the
> power of the States to insist that attendance at private schools, if it is to
> satisfy state compulsory attendance laws, be at institutions which provide
> minimum hours of instruction, employ teachers of specified training, and
> cover prescribed subjects of instruction . . . These cases were a sensible
> corollary of *Pierce v. Society of Sisters:* if the State must satisfy its interest
> in *secular* education through the instrument of private schools, it has a
> proper interest in the manner in which those schools perform their *secular*
> educational function. (emphases added).

Pursuant to *Allen* the Utah State Board policy properly could allow Bible

history to be taught and could regulate its subject matter, the training of its

teachers[1] and its required number of classroom hours.

The *Lanner* Court, however, then added *dicta* not necessary to the decision

of the case presented, to give its view that a State may grant elective credit to any

---

[1] SCBEST uses unaccredited teachers for its classes.  Second Amended Complaint ¶ 25.

generally available released time course as long as there is no test for religious

content.  662 F. 2d at 1362.  The Court stated:

> If the extent of state supervision is only to insure, just as is permitted in the
> case of church-sponsored full-time private schools, that certain courses are
> taught for the requisite hours and that teachers meet minimum qualification
> standards, nothing in either the establishment or free exercise clauses would
> prohibit recognizing all released-time classes or none, whether religious in
> content or not, in satisfaction of graduation[2] requirements.

Plaintiffs take sharp issue with this statement.  The Court has in substance

concluded that the State interest in assuring appropriate education in secular

subjects taught at religious schools marks the outer extent of the reach of the

Establishment Clause.  It has made the extent of permissible State scrutiny of how

secular subjects are taught at religious schools the only allowable limit that may be

imposed on religious released time education. It has reasoned that once hours and

teachers are properly regulated, any public school may do as it wishes with

released time religious education.  This proposition is instantly refuted by

*McCollum v. Board of Education*, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649

(1948), where released time religious education courses on school property were

held to offend the Establishment Clause irrespective of teacher accreditation and

hours of instruction.  Questions of teacher qualification are irrelevant to the

---

[2] The Court uses "graduation credit" and "elective credit" interchangeably.

constitutionality of released time religious education. *Zorach v. Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952).

The *Lanner* dicta are also questionable authority because they did not anticipate the analysis of *Larkin v. Grendel's Den,* 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed. 2d 297 (1982). The granting of an elective credit is an important governmental decision that may not be delegated to a private religious group. It is within the province of public school teachers and may not be delegated to a religious organization. *See, Smith v. Smith,* 523 F. 2d 121, 123-24 and n. 6 (4th Cir. 1975).

### IC. Plaintiffs do not seek any remedy with respect to accredited religious schools

Defendant argues that the grant of the declaratory judgment that plaintiffs seek would "render all accredited religious schools unconstitutional." Reply Mem., at 3. A judgment tracking the prayer for relief would do no such thing. It would speak only to defendant's practice with respect to released time religious courses, which are not alleged to have involved courses at accredited schools.

Respectfully submitted, November 28, 2009.

s/ Aaron J. Kozloski
D.S.C. Bar No. 9510
Capitol Counsel
P.O. Box 11902
Capitol Station

Columbia, S.C. 29211
Tel:  803-748-1320
Fax:  8-3-255-7074
Aaron@capitolcounsel.us


George Daly
(*pro hac vice*)
139 Altondale Avenue
Charlotte  N.C.  28207
Tel:  704-333-5196
Gdaly1@bellsouth.net
N.C. Bar No. 1071

Attorneys for Plaintiffs