IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

Robert Moss, individually and as general )
guardian of his minor child; Ellen Tillett, )
individually and as general guardian of her )
minor child; and The Freedom ) C.A. No. 7:09-1586-HMH
From Religion Foundation, Inc., )
) **OPINION & ORDER**
Plaintiffs, )
)
vs. )
)
Spartanburg County School District )
No. 7, a South Carolina body politic )
and corporate, )
)
Defendant. )

This matter is before the court on Defendant Spartanburg County School District No. 7's ("SCSD") motion to dismiss Plaintiffs' Establishment Clause claim and motion to dismiss Plaintiffs' Equal Protection Clause claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure as well as Plaintiffs' motion for leave to file a sur reply. For the reasons stated below, the court denies Defendant's motion to dismiss Plaintiffs' Establishment Clause claim and grants Defendant's motion to dismiss Plaintiffs' Equal Protection Clause claim. Additionally, the court denies Plaintiffs' motion to file a sur reply.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Robert Moss ("Moss") and Ellen Tillett ("Tillett") (collectively, "parent plaintiffs") are parents of students who currently attend Spartanburg High School in Spartanburg County, South Carolina. (Second Am. Compl. ¶ 6.) The Freedom From Religion Foundation, Inc. ("FFRF") is a Wisconsin corporation that "works to defend the constitutional principle of separation between church and state." (Id. ¶ 14.) Plaintiffs have filed suit against SCSD alleging

that its released time policy violates the Establishment Clause and the Equal Protection Clause of the United States Constitution.

S.C. Code Ann. § 59-1-460(A) allows a school district to "authorize[] a student to be excused from school to attend a class in religious instruction conducted by a private entity." "While in attendance in a religious instruction class pursuant to [§ 59-1-460], a student is not considered to be absent from school." § 59-1-460(B). In 2006, the South Carolina legislature enacted the Released Time Credit Act ("the Act") which allows a school district to "award high school students no more than two elective Carnegie units for the completion of released time classes in religious instruction as specified in Section 59-1-460." § 59-39-112(A) (2006).

"After the state legislature passed the [Act], a representative of the Spartanburg County Bible Education in School Time ("SCBEST") approached [SCSD] and expressed an interest in offering a released time class to students of Spartanburg High School." (Defs. Mem. Supp. Mot. Dismiss 4.) SCBEST is a private religious organization. On February 6, 2007, the Spartanburg County School Board approved a released time program ("RTP") policy and "at the March 7, 2007 Board meeting, the School District again read and officially passed the policy, entitled 'Released Time for Religious Instruction' ("the Policy")." (Id.) The Policy provides:

> RELEASED TIME FOR RELIGIOUS INSTRUCTION. Code JHCB
>
> Issued 3/07.
>
> Purpose: To establish the basic structure for released time for students for religious instruction.
>
> The board will release students in grades seven through twelve from school, at the written request of their parent/legal guardian, for the purpose of religious instruction for a portion of the day. The school will consider this part of the school day.

> The Board will not allow the student to miss required instructional time for the purpose of religious instruction. Any absences for this purpose must be during a student's non-instructional or elective periods of the school day.
>
> When approving the release of students for religious instruction, the board assumes no responsibility for the program or liability for the students involved. Its attitude will be one of cooperation with the various sponsoring groups of the school district.
>
> The sponsoring group or the student's parent/legal guardian is completely responsible for transportation to and from the place of instruction. The district assumes no responsibility or liability for such transportation. Religious instruction must take place away from school property and at a regularly designated location.
>
> District officials will insure that no public funds will be expended to support a released time program and that district staff and faculty will not promote or discourage participation by district students in a released time program.
>
> **Elective credit**
> The district will accept no more than two elective Carnegie unit credits for religious instruction taken during the school day in accordance with this policy. The district will evaluate the classes on the basis of purely secular criteria prior to accepting credit. The district will accept off campus transfer of credit for release time classes with prior approval.
>
> Adopted 3/07

(Second Am. Compl. ¶ 23.)

"In or around March 2007, SCBEST sent out a letter stating that it would offer religious instruction classes eligible for school credit starting in August 2007." (Defs. Mem. Supp. Mot. Dismiss 5.) The letter to parents and students provided information on how to register for the course. (Second Am. Compl. Ex. A (SCBEST Letter).) Both Moss and Tillet received the March letter from SCBEST.

Students who choose to participate in SCBEST's classes receive their grade from Oakbrook Preparatory School ("Oakbrook"), a private religious school located in Spartanburg,

South Carolina. (Id. ¶ 35.) "[T]he grades submitted by Oakbrook to [Spartanburg High School] are treated by [the school] as coming from Oakbrook and not from SCBEST and without further inquiry [the grades] are entered upon the student's official transcript and credited as satisfying an elective requirement used to compute grade point averages." (Id. ¶ 36(a).)

Plaintiffs filed a complaint on June 16, 2009, alleging that Defendant's policy violates the Establishment Clause of the United States Constitution. Defendant filed a motion to dismiss the complaint on August 31, 2009. Plaintiffs amended their complaint on September 17, 2009, adding a second claim for an Equal Protection Clause violation. Plaintiffs also filed a second amended complaint on September 30, 2009. Plaintiffs did not file a timely response to Defendant's motion to dismiss the Establishment Clause claim. On October 1, 2009, this court instructed Plaintiffs that if no response to the motion to dismiss were filed within ten days of the date of the order, the case would be dismissed for failure to prosecute. (October 1, 2009 Order.) Plaintiffs filed a memorandum in opposition to the motion to dismiss the Establishment Clause claim on October 10, 2009. Defendant filed a reply on October 22, 2009. On October 30, 2009, Defendant filed a motion to dismiss Plaintiffs' Equal Protection Clause claim. Plaintiffs filed a memorandum in opposition to the motion to dismiss on November 16, 2009, and Defendant filed a reply on November 20, 2009. On November 27, 2009, Plaintiffs filed a motion for leave to file a sur reply. Defendant filed a response in opposition on December 8, 2009. The motions are now ripe for consideration.

## II. Discussion of Law

### 1. Standing

SCSD moves to dismiss Plaintiffs' Establishment Clause claim under Rule 12(b)(1)[1] of the Federal Rules of Civil Procedure for lack of jurisdiction over the subject matter. "When a defendant raises standing as the basis for a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction, . . . the district court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (internal quotation marks omitted). Nevertheless, "[f]or purposes of ruling on a motion to dismiss for want of standing, the trial . . . court[] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975). Subject matter jurisdiction is limited by the "cases and controversies" requirement of Article III. Allen v. Wright, 468 U.S. 737, 750 (1984) (internal quotation marks omitted). "Doctrines like standing [and] . . . ripeness are simply subsets of Article III's command that the courts resolve disputes, rather than emit random advice." Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir. 1991).

"With respect to the standing question, the Supreme Court . . . has carefully explained the irreducible constitutional minimum required." Dixon v. Edwards, 290 F.3d 699, 711 (4th Cir. 2002) (internal citations and quotation marks omitted). "First, [a plaintiff] must have suffered an injury in fact, i.e., an invasion of a legally protected interest which is (a) concrete and

---

[1] Additionally, a standing argument can be properly made under Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, "[a] challenge to the standing of a party raises the issue of justiciability and implicates the subject matter jurisdiction of a federal district court." Miller v. Hygrade Food Prods. Corp., 89 F. Supp. 2d 643, 646 (E.D. Pa. 2000). "Therefore, a motion to dismiss for want of standing is properly brought under Fed. R. Civ. P. 12(b)(1)." Id.

particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. (internal quotation marks omitted). "Second, [his or her] injuries must be fairly traceable to the actions of the [d]efendant[], rather than the result of actions by some independent third party not before the court." Id. "Third, it must be likely, as opposed to merely speculative, that [his] injuries will be redressed by a favorable decision." Id. Hence, "Establishment Clause plaintiffs satisfy Article III only when they demonstrate that they have suffered injury in fact that was caused by the conduct they challenge and is redressable by a judicial decision." Suhre v. Haywood County, 131 F.3d 1083, 1085 (4th Cir. 1997).

SCSD alleges that Plaintiffs lack standing to bring an Establishment Clause claim because "Moss and Tillet have suffered no injury," "[n]one of Moss's and Tillett's money has been 'extracted and spent' to pay for the SCBEST program," "[o]ffensive contact, without more, is not redressable," and "FFRF lacks organizational standing." (Def. Mem. Supp. Mot. Dismiss 8-21.) The court will first address Moss and Tillet's standing.

"[T]he standing inquiry in Establishment Clause cases has been tailored to reflect the kind of injuries Establishment Clause plaintiffs are likely to suffer." Suhre, 131 F.3d at 1086. "[T]he Establishment Clause plaintiff is not likely to suffer physical injury or pecuniary loss . . . . Accordingly, rules of standing recognize that noneconomic or intangible injury may suffice to make an Establishment Clause claim justiciable." Id. Moss and Tillet allege that they have standing because "they are parents of children who currently attend a school subject to the [RTP]" and have "come into unwelcome contact with a State-sponsored religious practice." (Pls. Mem. Opp'n Mot. Dismiss 7, 11.)

The United States Supreme Court has consistently held that parents of school children have standing to bring suit in Establishment Clause cases where the student is directly affected by a public school's practices. See e.g., Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 486 n.22 (1982) ("It goes without saying that the laws and practices involved here can be challenged only by persons having standing to complain . . . . The parties here are school children and their parents, who are directly affected by the laws and practices against which their complaints are directed. These interests surely suffice to give the parties standing to complain."); School Dist. of Abington Twp., Pa. v. Schempp, 374 U.S. 203, 243 n.9 (1963) (Brennan, J., concurring) ("The parties here are school children and their parents, who are directly affected by the laws and practices against which their complaints are directed. These interests surely suffice to give the parties standing to complain."); Zorach v. Clauson, 343 U.S. 306, 310 n.4 (1952) ("No problem of this Court's jurisdiction is posed in this case since . . . appellants here are parents of children currently attending schools subject to the released time program."). Based on the foregoing, Moss and Tillett, as parents of children attending a school with an RTP, have standing to file suit in the instant case.

SCSD also argues that FFRF lacks organizational standing. "The standing requirement must be satisfied by individual and organizational plaintiffs alike." White Tail Park, Inc., 413 F.3d at 458. "An organizational plaintiff may establish standing to bring suit on its own behalf when it seeks redress for an injury suffered by the organization itself." Id. Additionally, an organization may have standing "to assert the rights of one or more of its members, even if it suffers no direct injury." Doe v. Porter, 370 F.3d 558, 561 (6th Cir. 2004).

> [A]n organizational plaintiff may establish associational standing to bring an action in federal court on behalf of its members when: (1) its members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit.

White Tail Park, Inc., 413 F.3d at 458 (internal quotation marks omitted). The court's "ultimate aim is to determine whether [each] plaintiff has a sufficiently 'personal stake' in the lawsuit to justify the invocation of federal court jurisdiction." Id. at 461. Plaintiffs "bear the burden of establishing the three fundamental standing elements." Id. at 459.

FFRF "works to defend the constitutional principle of separation between church and state, as well as to educate the public about the views of nontheists." (Second Am. Compl. ¶ 14.) FFRF alleges that "[o]ne of the plaintiffs is a member of FFRF. Other members of [FFRF] reside within the jurisdiction of defendant. These members have standing to sue in their own right." (Id.) Upon review, the court finds that FFRF has associational standing to act on behalf of its members because (1) the parent plaintiffs have standing to sue as individuals and one of the parent plaintiffs is a member of FFRF, (2) FFRF's purpose is to protect the constitutional principle of separation of church and state, and (3) the claims and relief requested by the parties are legal issues which do not require the participation of FFRF's individual members. See Doe, 370 F.3d at 562 (finding FFRF has associational standing although additional plaintiffs were members of FFRF).[2]

---

[2] FFRF, however, does not have standing to sue on its own behalf as it has not alleged that it has suffered a concrete injury. (Second. Am. Compl., generally.)

## 2. Rule 12(b)(6)

In federal court, a claimant must make only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (U.S. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (internal quotation marks omitted). In addition, the court must accept as true factual allegations in the complaint. However, this tenet is "inapplicable to legal conclusions." Id.

## 3. Establishment Clause

Plaintiffs do not challenge the constitutionality of S.C. Code Ann. § 59-1-460, which allows public schools to establish RTPs. (Second. Am. Compl., generally); (Pls. Second Mem. Opp'n Mot. Dismiss 2.) Rather, Plaintiffs allege that the manner in which Defendant administers its policy violates the Establishment Clause. Plaintiffs allege that

> [e]ach student attending defendant's released time course is subject to academic advantage from the defendant's practice of granting public school academic credit for proselytizing, sectarian and evangelical religious released time courses, in that the granting of academic grades by defendant for released time classes at the command of SCBEST may affect his or her grade point average [("GPA")] based

> on SCBEST's perception of the student's religious status or progress or lack thereof. [GPA] is used to determine eligibility for Legislative Incentives for Future Excellence (LIFE) scholarships . . . and is a significant determination in qualification for other educational opportunities, emoluments and distinctions. Non-attending students are subject to corresponding disadvantages.
> . . .
>
> Defendant has delegated to SCBEST the power to perform the governmental function of granting public school grades.

(Second Am. Compl. ¶¶ 11, 27.) Defendant alleges that the Establishment Clause claim must be dismissed because the RTP policy does not violate the Establishment Clause. (Def. Mem. Supp. Mot. Dismiss 22.)

Generally, RTPs that allow students to leave school grounds during school hours to receive religious instruction have been upheld as constitutional. See Zorach, 343 U.S. at 308, 315 (holding that program that allows students to "leave the school buildings and school grounds and go to religious centers for religious instruction or devotional exercises" is constitutional); Smith v. Smith, 523 F.2d 121, 125 (4th Cir. 1975) (finding RTP does not violate Establishment Clause); Lanner v. Wimmer, 662 F.2d 1349, 1357 (10th Cir. 1981) (citing Smith and finding "mere release of students during school hours to attend religious courses does not unconstitutionally advance or inhibit religion"); compare Illinois ex. rel. McCollum v. Bd. of Educ., 333 U.S. 203, 212 (1948) (holding that RTP that permits religious instruction on school grounds violates the Establishment Clause).

In Smith, the United States Court of Appeals for the Fourth Circuit upheld an RTP that allowed elementary school students to leave public school grounds to receive religious instruction from the Rockingham Council of WeekDay Religious Education ("WRE"). 523 F.2d at 125. In Smith, the court found that the RTP was "indistinguishable from and [therefore]

controlled by Zorach." Id. at 124. Accordingly, the Smith court upheld the constitutionality of the RTP.

The instant case is not wholly indistinguishable from Zorach and Smith. Neither Smith nor Zorach addressed an unaccredited private religious organization granting students an academic grade, such as in the instant case. Moreover, the court finds that Oakbrook's involvement with the grading process presents a significant factual difference from Zorach and Smith. Based on the foregoing, the court finds that Plaintiffs have stated a facially plausible Establishment Clause claim and denies Defendant's motion to dismiss the Establishment Clause cause of action.

### 4. Equal Protection Clause

Defendant also seeks to dismiss Plaintiffs' Equal Protection Clause cause of action. Plaintiffs allege that Spartanburg is

> (1) . . . allowing SCBEST to discriminate among students for religious reasons by adjusting their academic grade based on SCBEST's perception of the student's religious status or progress or lack thereof and (2) . . . not allowing unaccredited schools other than SCBEST to have their grades transferred as coming from an accredited private school [in violation of the Equal Protection Clause].

(Pls. Second Mem. Opp'n Mot. Dismiss 2-3.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (internal quotation marks omitted). "The Clause does not take from the States all power of classification, but keeps governmental decisionmakers from treating differently persons who are in all relevant respects

alike." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) (internal citations and quotation marks omitted).

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

Id. "[C]hallenged classification[s] need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such as race, religion, or gender." Giarratano v. Johnson, 521 F.3d 298, 303 (4th Cir. 2008).

Plaintiffs have failed to allege facts to support an inference that Spartanburg High School students who participate in the RTP are treated differently than students who choose not to participate. Further, Plaintiffs have not provided factual allegations to support intentional or purposeful discrimination against students who do not participate in the RTP. Additionally, Plaintiffs have not provided sufficient factual allegations to establish an Equal Protection Clause claim based on SCBEST's unaccredited status. Plaintiffs provide no factual allegations that suggest that SCBEST's program is not rationally related to Defendant's legitimate interest in providing RTPs for students who choose to participate. Accordingly, the court grants Defendant's motion to dismiss Plaintiffs' Equal Protection Clause claim.

### 5. Motion for Leave to File Sur Reply

Plaintiffs filed a motion for leave to file a sur reply alleging that Defendant discussed information outside of the scope of the motion to dismiss the Equal Protection Clause claim. (Pls. Mot. File Sur Reply 2.) However, the court did not consider any of Defendant's arguments

that were outside of the scope of the motion to dismiss the Equal Protection Clause claim. Therefore, the court denies Plaintiffs' motion as moot.

Therefore,

**IT IS ORDERED** that Defendant's motion to dismiss Plaintiffs' Establishment Clause claim, docket number 19, is denied; it is further

**ORDERED** that Defendant's motion to dismiss Plaintiffs' Equal Protection Clause claim, docket number 33, is granted; and it is

**ORDERED** that Plaintiffs' motion for leave to file a sur reply, docket number 36, is denied as moot.

**IT IS SO ORDERED**.

                s/Henry M. Herlong, Jr.
                Senior United States District Judge

Greenville, South Carolina
December 17, 2009