**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| Freedom From Religion Foundation, Inc.,<br>    a Wisconsin non-profit corporation,<br><br>Robert Moss and Melissa Moss; and<br><br>Ellen Tillett, individually and as general guardian<br>    of her minor child;<br><br>          Plaintiffs,<br><br>    v.<br><br>Spartanburg County School District No. 7,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 7:09-cv-1586-HMH<br>)<br>)<br>)<br>)<br>) |

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Eric C. Rassbach (admitted *pro hac vice*)
Lori H. Windham (admitted *pro hac vice*)
Eric N. Kniffin (admitted *pro hac vice*)
The Becket Fund for Religious Liberty
3000 K St. NW, Suite 220
Washington, DC 20007
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

Kenneth E. Darr, Jr. (Fed. I.D. #989)
Lyles, Darr, & Clark, LLP
104 N. Daniel Morgan Ave.
Suite 300
Spartanburg, South Carolina 29306
kdarr@ldclaw.com
Telephone: (864) 585-4806
Facsimile: (864) 585-4810

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... v

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 1

I.  Plaintiffs have failed to rebut the District's showing that Plaintiffs lack standing ............. 1

    A.  Plaintiffs concede that no parent of a Spartanburg High School student was a member of FFRF when the Complaint was filed. .................................................... 1

    B.  Plaintiffs have failed to rebut the District's showing that the individual Plaintiffs did not have "direct contact" with the District's Policy. ........................................ 3

II.  Plaintiffs have failed to rebut the District's showing that the District is entitled to summary judgment on the Establishment Clause claim. .................................................... 5

    A.  Plaintiffs have failed to distinguish the District's Policy from the released time policies upheld in *Zorach* and *Smith* v. *Smith* ....................................................... 6

    B.  Plaintiffs have failed to create an issue of material fact regarding whether the District's adoption of the Policy had an "ostensible and predominant" purpose of advancing religion ................................................................................................... 6

        1.  The District's Policy, like the South Carolina Released Time Credit Act, was passed with the legitimate secular purpose of accommodating religion, not advancing it. ......................................................................... 7

        2.  The District's Policy, like the South Carolina Released Time Credit Act, was not passed to promote one group, but is neutral and available to all. 10

        3.  Plaintiffs cannot create an issue of material fact in their favor by relying on the motivations of individual District officials. ................................... 11

    C.  Plaintiffs have failed to create an issue of material fact concerning whether the District's policies and customs have the principal or primary effect of advancing religion. ..................................................................................................................... 12

        1.  Plaintiffs tacitly concede that the District's released time Policy does not advance religion. ................................................................................. 13

            a)  Plaintiffs have not provided any evidence that the District has an unwritten policy or custom of advancing religion. ....................... 13

            b)  Plaintiffs' claims of favoritism by individual District officials do not create an issue of material fact. .............................................. 13

        2.  The District's policy of accepting transcripts from an accredited school does not create an issue of material fact. ................................................. 13

D.     Plaintiffs have failed to create an issue of material fact regarding excessive entanglement. ................................................................................................. 15

CONCLUSION ............................................................................................................ 15

## INDEX OF EXHIBITS

N        Declaration of Eric N. Kniffin, Esq.

N-1      Excerpts from the transcript of the deposition of Melissa Moss, taken on August 13, 2010.

N-2      Excerpts from the transcript of the deposition of Troy Bridges, taken on October 1, 2010.

N-3      Excerpts from the transcript of the deposition of Steven Smith, taken on September 15, 2010.

N-4      *S.C. to Allow Credit for Off-Campus Religious Study*, Education Week, Sept. 20, 2006, at 25.

O        December 8, 2010, Declaration of Rodney Graves.

# TABLE OF AUTHORITIES

**Cases**

*Allen* v. *Wright*, 468 U.S. 737 (1984) ........................................................................ 5

*Becker* v. *Fed. Election Comm'n*, 230 F.3d 381 (1st Cir. 2000). ................................. 2

*Carr* v. *Alta Verde Indus., Inc.,* 931 F.2d 1055 (5th Cir. 1991). ................................ 2

*Cleveland Branch, NAACP* v. *City of Parma, OH*, 263 F.3d 513 (6th Cir. 2001). ....... 2

*Comer* v. *Cisneros*, 37 F.3d 775 (2d Cir. 1994). ......................................................... 2

*Corp. of Presiding Bishop* v. *Amos*, 483 U.S. 327 (1987) .......................................... 14

*Ehlers-Renzi* v. *Connelly School of the Holy Child, Inc.*, 224 F.3d 283 (4th Cir. 2000) ........ 14, 15

*Focus on the Family* v. *Pinellas Suncoast Transit Auth.*, 344 F.3d 1263 (11th Cir. 2003) ........... 2

*Friends of the Earth, Inc.* v. *Laidlaw Envt'l Servs. (TOC)*, *Inc.*, 528 U.S. 167 (2000) ............. 2

*Kaufman* v. *Allstate N.J. Ins. Co.*, 561 F.3d 144 (3d Cir. 2009) .................................. 2

*Lambeth* v. *Bd. Of Comm.'s of Davidson County*, 407 F.3d 266 (4th Cir. 2006) ......... 5

*Lanner* v. *Wimmer*, 662 F.2d 1349 (10th Cir. 1981) ............................................ 8, 15

*Larkin* v. *Grendel's Den*, 459 U.S. 116 (1982) ......................................................... 15

*Lemon* v. *Kurtzman*, 403 U.S. 602 (1972) ....................................................... 5, 13, 15

*Madison* v. *Riter*, 355 F.3d 310 (4th Cir. 2003) ...................................................... 14

*Monell* v. *New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ................... 12, 13

*Mueller* v. *Allen*, 463 U.S. 388 (1983) ..................................................................... 15

*Mullan* v. *Torrance*, 22 U.S. (9 Wheat.) 537 (1824) .................................................. 2

*Newdow* v. *Lefevre*, 598 F.3d 638 (9th Cir. 2010) .................................................... 5

*Nova Health Sys.* v. *Gandy*, 416 F.3d 1149 (10th Cir. 2005). ..................................... 2

*Park* v. *Forest Serv. of the United States*, 205 F.3d 1034 (8th Cir. 2000). .................. 2

*Perry* v. *Vill. of Arlington Heights,* 186 F.3d 826 (7th Cir. 1999). .............................. 2

*Sch. Dist. of Abington Tp., Pa.* v. *Schempp*, 374 U.S. 203 (1963). ............................ 3

*Schreiber Foods, Inc.*, v. *Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005) ......... 2

*Sierra Club* v. *Morton*, 405 U.S. 727 (1972) .............................................................. 2

*Smith* v. *Smith*, 523 F.2d 121 (4th Cir. 1975) ........................................................... 8

*White* v. *Lee*, 227 F.3d 1214 (9th Cir. 2000). ........................................................... 2

*Zorach* v. *Clauson*, 100 N.E.2d 463 (N.Y. 1951). .................................................... 3

*Zorach* v. *Clauson*, 303 U.S. 306 (1952) ............................................................... 3, 6

**Statutes**

2006 S.C. Acts 322 ..................................................................................................... 8

S.C. Code Ann. § 59-39-100(D) ................................................................................ 9

**Rules**

Fed. R. Evid. 902(6) ................................................................................................... 8

## INTRODUCTION

Defendant Spartanburg County School District No. 7 ("District") has shown that (1) the Plaintiffs have no standing; and (2) even assuming they do, they have not met their burden of showing that there are genuine issues of material fact on their Establishment Clause claim. Dkt. 72-1 at 14-30.

In trying to stave off the District's summary judgment motion, Plaintiffs continue to rely primarily on misrepresentations of the facts in this case. Indeed, in their opposition memorandum, Plaintiffs go so far as to present an incomplete and misleading quotation of deposition testimony to the Court in an effort to shore up one of their arguments. Dkt. 78 at 10. But even if Plaintiffs' factual claims were accurate representations of the evidence they cite to—many of which definitely are not—Plaintiffs would still not have created a material fact issue, because they have not shown a relevant policy or custom. A string of suppositions, speculation, and stray remarks cannot rebut the District's summary judgment showing. The District is thus entitled to judgment as a matter of law.

## ARGUMENT

**I.  Plaintiffs have failed to rebut the District's showing that Plaintiffs lack standing.**

**A.  Plaintiffs concede that no parent of a Spartanburg High School student was a member of FFRF when the Complaint was filed.**

The District has shown that Freedom From Religion Foundation, Inc. ("FFRF") is not a proper plaintiff because Plaintiffs have failed to show that any FFRF member had standing when it invoked the Court's jurisdiction by filing the original complaint. Dkt. 72-1 at 14. In response, Plaintiffs now concede this fact. Dkt. 78 at 7-8. Their new argument, made without citing any supporting authority, is that the Fourth Circuit in *Kucan* misread the Supreme Court's decision in *Laidlaw*. *Id.* Aside from the fact that this Court is not in the business of overruling the Fourth Circuit, Plaintiffs are wrong about *Laidlaw*. *Laidlaw's* rule that standing is determined "at the

1

time the action commences"[1] was neither a "new constitutional rule," Dkt. 78 at 7, nor an "off-hand determination[]," *id.* at 8. Chief Justice Marshall articulated this principle in 1824,[2] and it is the well-established rule of every federal circuit.[3] Plaintiffs' invitation to reject this basic threshold requirement is patently without merit; FFRF should be dismissed.

Plaintiffs alternatively suggest that the Court should ignore FFRF's failure to carry its burden to prove standing and allow FFRF to remain as a plaintiff anyway, by pretermitting the standing issue, or by granting a motion for permissive intervention. Dkt. 78 at 8-9. The Court should do neither. Plaintiffs' suggestions presume that the FFRF itself is among the injured, and the individual Plaintiffs are FFRF members with standing, which they are not. Moreover, any motion for permissive intervention would be untimely, as the motions deadline has passed and both discovery and summary judgment briefing have concluded. Dkt. 44 & 66. FFRF's interest in the subject matter of this lawsuit was insufficient to confer standing to commence this litigation[4] and is still insufficient under any alternative theory that ignores this deficit as inconsequential. As Plaintiffs concede, nothing is gained by allowing FFRF's continued presence as a party, Dkt. 78 at 8, and there is no reason to presume it has standing as a Plaintiff.

---

[1] *Friends of the Earth, Inc.* v. *Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000).

[2] *Mullan* v. *Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824) (Marshall, C.J.).

[3] *Becker* v. *Fed. Election Comm'n,* 230 F.3d 381, 386 n.3 (1st Cir. 2000); *Comer* v. *Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994); *Kaufman* v. *Allstate N.J. Ins. Co.*, 561 F.3d 144, 152 (3d Cir. 2009); *Carr* v. *Alta Verde Indus., Inc.,* 931 F.2d 1055, 1061 (5th Cir. 1991); *Cleveland Branch, NAACP* v. *City of Parma*, 263 F.3d 513, 524–26 (6th Cir. 2001); *Perry* v. *Vill. of Arlington Heights,* 186 F.3d 826, 830 (7th Cir. 1999); *Park* v. *Forest Serv. of the United States,* 205 F.3d 1034, 1037 (8th Cir. 2000) (facts noted by plaintiffs are "***not . . . relevant*** on the issue of standing because all of these events occurred *after [the plaintiff] filed her original complaint*.") (emphasis added); *White* v. *Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000); *Nova Health Sys.* v. *Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005); *Focus on the Family* v. *Pinellas Suncoast Transit Auth.,* 344 F.3d 1263, 1275 (11th Cir. 2003) ("Standing is to be determined as of the time . . . the plaintiff's compliant is filed, and *is not altered by events unfolding during litigation*.") (emphasis added); *Schreiber Foods, Inc.*, v. *Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 n.3 (Fed. Cir. 2005) ("The initial standing of the original plaintiff is assessed at the time of the original complaint, *even if the complaint is later amended.*") (emphasis added).

[4] Plaintiff FFRF's allegations as to standing are similar to those of the Sierra Club in *Sierra Club* v. *Morton*, 405 U.S. 727, 735 n.8 (1972), where the Supreme Court held a claimed "special interest" was insufficient to confer standing.

**B.  Plaintiffs have failed to rebut the District's showing that the individual Plaintiffs did not have "direct contact" with the District's Policy.**

The individual Plaintiffs likewise have not established standing. The District has shown that the individual Plaintiffs did not have "direct contact" with the Policy. Dkt. 72-1 at 14-17; Dkt. 79 at 7-9. In response, Plaintiffs contend: (1) they do not need direct contact with the Policy because they are parents or students, Dkt. 78 at 2; and (2) they do have direct contact with the Policy, *id.* at 3-6.

Neither argument is convincing. First, Plaintiffs have not cited a single case where parents had standing merely because their children attended a school "subject to" a challenged policy or practice. Dkt. 78 at 2-6. The Plaintiffs' children in *Zorach* had standing not by virtue of their enrollment, because the complaint alleged[5] that ***they had been coerced*** by the released time program. *Zorach* v. *Clauson*, 303 U.S. 306, 322 (1952) (Frankfurter, J. dissenting). Likewise, the Plaintiffs' children in *Schempp* had standing not by virtue of their enrollment, but because ***they had to endure*** "[a]t least ten verses from the Holy Bible . . . read, without comment, at the opening of . . . each school day." *Sch. Dist. of Abington Tp., Pa.* v. *Schempp*, 374 U.S. 203, 208 (1963).

Second, Plaintiffs still cannot show direct contact with the Policy. Their response brief describes no contacts between Plaintiff Tillett's child and the Policy, thus conceding that Tillett's child does not have standing. (Since Ellen Tillett's own standing depends on her child's, she also should have no standing, though she does claim other contacts set out below.)

For the other three individual Plaintiffs, the following "contacts" with the Policy are listed:[6]

For Plaintiff Ellen Tillett: (Dkt. 78 at 4)

- "Receiving" the SCBEST letter from co-Plaintiff Robert Moss;[7]

---

[5] The Supreme Court's decision in *Zorach* was based on the pleadings; the petitioners had appealed the New York Court of Appeals' decision on a motion to dismiss. *Zorach* v. *Clauson*, 100 N.E.2d 463, 465 (N.Y. 1951).

[6] Plaintiffs rely on their affidavits, filed with their motion for summary judgment. The Court should strike these affidavits, in whole or in part, as set forth in the District's motion to strike. Dkt. 82.

[7] Plaintiffs' have not shown that Plaintiff Ellen Tillett or her child had *ever seen* the letter at the time the Complaint was filed. Her deposition testimony clearly bears this out. Dkt 78-2, Ps' Resp. Ex. 2 (Tillett v.1 dep.) at 28:24-29:4

- Finding *both* released time and released time for elective credit "unwelcome and emotionally distressing;" and
- Fearing that her son might *someday*[8] be academically disadvantaged because someone else's child elects to take the SCBEST class for credit.

For Plaintiff Robert Moss: (*Id.* at 3)

- Receiving a letter from SCBEST;
- *Not* receiving a follow-up letter from the District;
- Presenting comments to the District's Board of Trustees after it unanimously passed the Policy;
- Accepting an invitation to meet with Interim Superintendent and Chairman of the Board of Trustees to discuss the Policy; and
- Feeling less comfortable about volunteering at his daughter's high school.

For Plaintiff Melissa Moss: (*Id.* at 4-5)

- Feeling "like an outsider" because of other school events unrelated to the Policy;[9]
- Feeling "like an outsider" and "uncomfortable" when her family received a letter from SCBEST;
- Feeling "like an outsider" because Spartanburg High School ("SHS") students may choose to take an off-campus elective course through Oakbrook Preparatory School (just as she took an off-campus elective course through Wofford College);
- Feeling "'more distant' from a friend" when he showed her his syllabus from the SCBEST class;[10] and
- Plaintiffs also now claim that "SCBEST is a visible occurrence in her [Melissa Moss'] environment every day as the students walk across the parking lot to the church." Dkt. 78 at 5. However, Melissa Moss testified that she ***never saw*** students walking to or from the SCBEST class. D-Ex. N-1 (Melissa Moss dep.) at 93:25-94:4.

---

("Eric Kniffin: When do you recall ***first*** seeing this letter? Ellen Tillett: I received some — ***as we were doing discovery*** there were documents that went around. I believe I saw this. [Plaintiff Robert Moss] showed it to me at some point. ***The first time I read it carefully was probably yesterday at the deposition***.") (emphasis added). However, Plaintiffs try to explain this away and establish standing upon "a mistake of counsel." Dkt. 78 at 4 n.1.

[8] The undisputed facts show that Plaintiff Tillett's son has not been academically disadvantaged by the Policy. *See* Dkt. 79 at 26; Dkt. 80-10, D-Ex. J (Wolfe Decl.) at ¶¶ 3-4, 7-9 (grades for Tillett's son's honors choir class and PE class were substantially higher than grades for the SCBEST course). Plaintiff Tillett's fears about what *might* happen someday cannot give her standing. Courts do not "address hypothetical constitutional violations in the abstract which did not affect the plaintiff." Dkt. 79 at 26, quoting *Tanner Adver. Group, L.L.C.* v. *Fayette County, Ga.*, 451 F.3d 777, 795-96 (11th Cir. 2006).

[9] Melissa Moss's allegations about "several Christian exercises conducted" at Spartanburg High School are self-serving and uncorroborated. *See* Dkt. 82 (Mo to Strike Ps' Affidavits); Dkt. 80-9, D-Ex. I (Stevens Decl.).

[10] Melissa Moss testified that she felt "more distant" from her friend only because she did not want to discuss her lawsuit against the District with him. Dkt. 78-4, Ps' Resp. Ex. 4 (Melissa Moss dep.) at 83:2-9 ("Eric Kniffin: Did you feel more distant from him when you found out that he was taking this class? Melissa Moss: A little bit, because there was that big piece I wasn't comfortable talking to him about, whereas I was comfortable talking to other people about it. Q: That's because there was lawsuit about the Policy, right? A: Yes. That's what I was uncomfortable with."). However, Melissa Moss testified that none of her fellow students were openly hostile to her, *even* about her lawsuit against the District. D-Ex. N-1 at 65:4-13.

Nothing listed above is anything remotely similar to the "concrete, particularized, and personal injury resulting from his frequent, unwelcome contact" the Ninth Circuit found that Newdow had with the national motto, "given the ubiquity of coins and currency in everyday life." *Newdow* v. *Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010), cited at Dkt. 72-1 at 9, Dkt. 78 at 6. Plaintiffs' claimed "contacts" amount to nothing more than the "'abstract stigmatic injury' resulting from [ ] outsider status" that is "insufficient to confer standing." *Id.* at 642-43 (quoting *Allen* v. *Wright*, 468 U.S. 737, 755-56 (1984)).

Because Plaintiffs have failed, after extensive discovery, to meet their burden of establishing basic facts essential to their standing, their claims must be dismissed.

## II.  Plaintiffs have failed to rebut the District's showing that the District is entitled to summary judgment on the Establishment Clause claim.

To survive summary judgment on their Establishment Clause claim, Plaintiffs must demonstrate a material fact dispute over one of the three elements of the *Lemon* test: whether the released time policy has a secular purpose, whether it advances religion, or whether it excessively entangles church and state. *Lambeth* v. *Bd. Of Comm.'s of Davidson County*, 407 F.3d 266 (4th Cir. 2006). As the District has already shown, Dkt. 79 at 9-10, this is a heavy burden for Plaintiffs, and one they have not carried in their summary judgment opening brief.

Plaintiffs' opposition to the District's summary judgment motion fares no better. Not only do Plaintiffs fail to distinguish *Smith* v. *Smith*—the leading Fourth Circuit released time case—they ignore this precedent altogether. As to *Lemon*'s purpose prong, Plaintiffs cannot support their speculation that the District accommodated released time for elective credit to advance Christianity. As for effects, they are simply wrong to suggest it is "irrelevant" that the District treats released time courses no differently than other off-campus electives. Finally, Plaintiffs cannot prove entanglement while ignoring case law that permits and even requires accommodation.

**A. Plaintiffs have failed to distinguish the District's Policy from the released time policies upheld in *Zorach* and *Smith* v. *Smith*.**

As the District stated in the introduction to its summary judgment brief, its Policy is "entirely unremarkable in its fidelity to *Zorach* v. *Clauson* and *Smith* v. *Smith*." Dkt. 72-1 at 1; *see also* Dkt. 79 at 10-11. Plaintiffs' response does not contest the District's reading of *Smith*—indeed, it does not cite *Smith* at all.

Plaintiffs' entire case is premised on the idea that there is an important constitutional difference between "released time" and "elective credit released time," but they still have not explained what this difference is. Dkt. 78 at 14, 15. Instead, they complain that the South Carolina Legislature, by determining that elective credit was necessary to restore school districts' ability to accommodate citizens' interest in released time religious instruction, "assumes the conclusion that elective credit released time is constitutional." *Id*. at 14. But Plaintiffs cannot survive summary judgment by attempting to shift the burden of proof. Plaintiffs have still not shown why an otherwise constitutional released time policy violates the Establishment Clause by doing something else that is also constitutional: recognizing credits granted by an accredited religious school. *See* Dkt. 79 at 11.

**B. Plaintiffs have failed to create an issue of material fact regarding whether the District's adoption of the Policy had an "ostensible and predominant" purpose of advancing religion.**

The District's summary judgment brief demonstrated that no reasonable jury could fail to find that the Policy had a genuine secular purpose. Dkt. 72-1 at 17-22. The District showed that its Policy was a largely passive response to a state law and requests from citizens; that it intended to—and did—establish a neutral policy that is available to all who seek to use it; and that its neutral administration of the Policy demonstrates its proper purpose. *Id*.

In response, Plaintiffs finally mount an open challenge to the constitutionality of the South

6

Carolina Released Time Credit Act ("RTCA").[11] Plaintiffs claim the preamble of the RTCA "indicates a purpose to advance elective credit released time." Dkt. 78 at 9-10. Their first three purpose arguments—(1) released time for credit is not covered by *Zorach*; (2) the 1997 credit increase is unrelated to the RTCA and the District's Policy; and (3) citizen interest was merely for released time, not released time for credit—apply every bit as much to the RTCA as they do to the Policy. *Id*. at 9-11. Only Plaintiffs' final argument, repeating their unsubstantiated belief that the District changed the wording of its Policy to exclude non-Christians, applies specifically to the District. *Id*. at 12.

Plaintiffs' arguments are to no avail. The District's Policy is modeled upon the RTCA. *See* Dkt. 72-1 at 5-6. The District's Policy, like the RTCA, was passed with the legitimate secular purpose of accommodating religion—just like so many other released time programs. Neither the Policy nor the RTCA were passed to promote a single group or religion; rather, they establish a neutral policy open to all. Lastly, Plaintiffs efforts to prove the private motivations of individual District officials fail as a matter of fact and as a matter of law.

### 1. The District's Policy, like the South Carolina Released Time Credit Act, was passed with the legitimate secular purpose of accommodating religion, not advancing it.

Plaintiffs have conceded that the District passed its Policy for the same reason the South Carolina Legislature passed the RTCA: to restore "the school districts' ability to accommodate parents' and students' desires to participate in released time programs," Dkt. 30 at 19 n.8. However, Plaintiffs claim that both the Policy and the RTCA are unconstitutional because *Zorach* covers only "regular" released time, and that released time for credit is different in some fundamental way. Dkt. 78 at 9-10.

But Plaintiffs are mistaken: there is no such thing as "regular released time." Any school dis-

---

[11] Until now, Plaintiffs have repeatedly denied that they are challenging the RTCA. Dkt. 36-1 at 1; Dkt. 49 at 3-4, 7-11.

trict that responds to citizen requests for released time must consider what is necessary to accommodate the religious exercise of its citizens *under the circumstances*.[12] In *Smith*, "the accommodations of the school program to religious training were generous and thorough-going." *Smith* v. *Smith*, 523 F.2d 121, 124 (4th Cir. 1975). In *Lanner*, the board of education not only allowed students to earn credit for released time,[13] it shared its public address and bell system and coordinated parent-teacher conferences with the LDS seminary next door. *Lanner* v. *Wimmer*, 662 F.2d 1349, 1355 (10th Cir. 1981). The court found that such accommodations were "nothing more than an administrative effort to accommodate the released-time program with as little inconvenience as possible." *Id*. at 1359.

Plaintiffs have failed to show why this case is any different. The South Carolina Legislature and the District responded to concerns that a 1997 law that increased high school graduation requirements by twenty percent "essentially eliminated the school districts' ability to accommodate parents' and students' desires to participate in released time programs."[14] 2006 S.C. Acts 322. The RTCA's sponsor, Senator George H. Campsen III, said that concerns over drops in participation rates in non-credit released time programs were "virtually eliminated" after South Carolina increased graduation requirements.[15]

Contrary to Plaintiffs' suggestion, Dkt. 78 at 10-11, ample evidence supports the District's claim that it passed the Policy to offset the effects of increased graduation requirements.[16] The

---

[12] The District also notes that the only relevant purpose here is the District's, not the Legislature's. Dkt. 72-1 at 18.

[13] The 10th Circuit only enjoined elective credit "insofar as the program required a judgment as to whether the courses were 'mainly denominational' in content." The Court stated explicitly that its decision did not prohibit policies—such as the Policy at issue in this case—that allow elective credit for any released time classes "that do not require any test for religion content." *Lanner* v. *Wimmer*, 662 F.2d 1249, 1362 (10th Cir. 1981).

[14] Plaintiffs suggest otherwise. Dkt. 78 at 10-11.

[15] *S.C. to Allow Credit for Off-Campus Religious Study*, Education Week, Sept. 20, 2006, at 25 (D-Ex. N-4).

[16] Plaintiffs claim that Ex. 176—a newspaper article quoting citizens who said that the credit increase made it difficult to take released time—is not admissible because no witness testified that it is accurate. Dkt. 78 at n.5. Newspaper articles are self-authenticating. FED. R. EVID. 902(6). The District submits this newspaper article, which it produced from its own files, not for the truth of matters asserted in the article, but to show that the District was aware that citizens had expressed concerns about the difficulty of taking released time under the new graduation require-

document Plaintiffs admit "was a part of defendant's development of the Policy," Dkt. 71-1 at 7,

informed the District that:

> SCBEST has successfully offered High School Bible classes in recent years until
> the new credit requirements were changed from 21 [sic] Carnegie units to 24.
> Students now do not have enough discretionary elective time to afford them the
> opportunity to take the Bible Class without receiving the compensation of getting
> a Carnegie unit for credit.

Dkt. 71-28, P-Ex. 27 at 2.

Plaintiffs, however, claim that the District's testimony "cannot be squared with the objective

fact that SCBEST undertook the course in the very year of the change [1997]." But Plaintiffs

miss that the law *only* changed graduation requirements for the next school year's incoming

freshmen: it was *four years* before all high school students needed 24 credits to graduate. S.C.

CODE ANN. § 59-39-100(D), 1997 Act No. 155, Part II, § 6. And this is exactly what happened:

SCBEST enrollment decreased "around 2000" to one or two students a class; a few years later

SCBEST decided to stop offering the class. D-Ex. N-2 (Bridges dep.) at 18-19.[17]

More importantly, Plaintiffs' argument *materially misquotes* the deposition testimony of Dr.

Thomas White, the District's 30(b)(6) representative. Plaintiffs tell the Court that Dr. White testi-

fied as follows:

> I can safely say that the drop in enrollment coincided with an increase in the
> number of units required . . . and that could have had an impact.

Dkt. 78 at 10.

But that's not at all what Dr. White said. His *actual* testimony reads:

> I think I can safely say that *the time period for* the drop in enrollment coincided
> with *a general time period where there was* an increase in the number of units
> required for obtaining a high school diploma in South Carolina, and that could

---

ments. In any case, the District has cured Plaintiffs' objection with the attached Declaration of Rodney Graves, D-
Ex. O, which states that the article truly and accurately reflects his statements about the District's Policy.

[17] This dovetails with Rodney Graves' account that there were no SHS students enrolled in SCBEST classes for
"about two years" before the District passed its Policy in early 2007. D-Ex. O (Graves Decl.); Dkt. 73-4, D-Ex. B-2
(Graves dep.) at dep. ex. 177.

have had an impact on folks deciding not to take that course.

Dkt. 78-5, Ps' Resp. Ex. 5 (District 30(b)(6) dep.) at 10:21-11:5.

As the District has carefully documented, Plaintiffs have at many points misled this Court by *selectively* quoting from deposition testimony. Dkt. 79 at 1-4, 9-10, 16; Dkt. 83. But here Plaintiffs have ***falsely quoted*** a deposition transcript in an apparent effort to further mislead the Court.

The undisputed evidence shows that the District passed its Policy for the same reason South Carolina passed the RTCA: because it believed that, *under the circumstances*, elective credit was necessary to accommodate the religious exercise of its citizens. Thus, both the Policy and the RTCA were passed for what ***even Plaintiffs concede*** is a legitimate secular purpose. Dkt. 73-9, D-Ex. B-7 at Resp. to RFA 46.

### 2. The District's Policy, like the South Carolina Released Time Credit Act, was not passed to promote one group, but is neutral and available to all.

The District has demonstrated that it passed the Policy as part of a broader effort to provide students with a variety of educational opportunities, not to promote any one religion or group. Dkt. 72-1 at 4-5, 9-12, 21-22. The District's purpose is consistent with its educational mission.[18] Plaintiffs offer nothing new to rebut the District's showing, but only incorporate by reference Plaintiffs' argument that the District's alleged "direct aid" and "close cooperation" with SCBEST, and its supposedly "last-minute"[19] decision to modify the South Carolina School Board Association's ("SCSBA") model policy "show that its purpose was to favor Christianity of the Oakbrook persuasion." Dkt. 78 at 13, citing Dkt. 71-1 at 24-26.

Likewise, Plaintiffs' account of individual District officials' interaction with SCBEST is

---

[18] The District's mission includes "developing and maintaining an educational program designed to meet the needs of the community" by, in part, "offering students and their families a variety of educational opportunities through numerous community educational programs and providers." Dkt. 80-8, D-Ex. H (White Dec. 2, 2010, Decl.) at ¶2. The stated mission of the District's only high school, SHS, "is to cooperate with home and community to provide educational programs that enable students to realize their potential as productive members of a diverse society." Dkt. 76-4, D-Ex. B-28.

[19] The summary judgment record does not support Plaintiffs' characterization of this change as "last minute." *See* Dkt. 83 at 7.

grossly misleading. Dkt. 79 at 15-18. Plaintiffs' conclusory allegations, speculation, unsubstanti-ated assertions, and legalistic argumentation are no substitute for specific facts showing genuine issues of material fact. *Id.* at 15-16; Dkt. 83 (D's Mo to Strike Inadmiss. Stmts.). Plaintiffs' speculation that the District changed "may award" to "will accept" to exclude non-Christian groups is not supported by any evidence and ignores the reality of how accreditation and over-sight generally work. Dkt. 79 at 19-20. As demonstrated in the District's opening brief, it was SCBEST that repeatedly initiated contact with the District, which responded in an even-handed way, in accordance with its policies and procedures. Dkt. 72-1 at 4-5, 9-12, 21-22. Furthermore, Plaintiffs concede that the District told them and their counsel—before Plaintiffs filed this law-suit—that Jewish and Muslim groups were welcome to offer released time for credit under its Policy. Dkt. 72-1 at 9 & n.10.

While Plaintiffs have proven they personally believe wholeheartedly that both the State of South Carolina[20] and the District intend to promote Christianity, their considerable efforts to prove that their beliefs are grounded in reality have failed to create an issue of material fact suf-ficient to convince a *reasonable* jury that they are right.

### 3. Plaintiffs cannot create an issue of material fact in their favor by relying on the motivations of individual District officials.

As the District explained in response to Plaintiffs' summary judgment motion, although the summary judgment evidence does not disclose favoritism on the part of any District official,[21] Plaintiffs must demonstrate much more than just the unconnected actions of individual officers; they must also demonstrate that the District has a policy—formal or informal—to advance relig-

---

[20] Plaintiff Robert Moss created a bumper sticker for his laptop computer that reads, "**Christianity, THE religion endorsed by the State of South Carolina!**" He testified that he believes this is true "[b]ecause it is the religion that the State of South Carolina gives state credit for classes in. . . . Christianity is endorsed by the State of South Caro-lina when it gives grades and credit to students who take courses in Christianity." Dkt. 78-3, Ps' Resp. Ex. 3 (Robert Moss dep.) at 96:20-97:15.

[21] Furthermore, it is worthy of note that Plaintiffs testified that they do not know what motivated District officials in voting for or implementing the Policy. Dkt. 72-1 at 19-20.

ion. Dkt. 79 at 13-15. This "policy or practice" requirement is rooted in both Establishment Clause and Section 1983 jurisprudence. *Id.* at 14-15.

The District's Policy is neutral on its face and in its administration. Dkt. 72-1 at 23-25. The "stray remarks" cited by Plaintiffs are not enough to show that the District has a policy or custom of advancing religion. *Id.* at 15. Because nothing in Plaintiffs' response shows the existence of such a policy or custom, the District cannot be liable under *Monell. Id.* (citing *Monell* v. *New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

### C. Plaintiffs have failed to create an issue of material fact concerning whether the District's policies and customs have the principal or primary effect of advancing religion.

The District's summary judgment brief demonstrated that its Policy does not advance religion for three reasons: (1) the Policy is neutral on its face; (2) the District has implemented the Policy without favoritism; and (3) no reasonable observer could conclude that the District runs SCBEST or has delegated governmental functions to SCBEST. Dkt. 72-1 at 22-26.

Plaintiffs' response leaves the District's arguments virtually untouched. It refers to Plaintiffs' summary judgment brief, but takes issue with only immaterial aspects of the District's factual account. Plaintiffs deny that SCBEST made a "freedom of information" request for an address list,[22] and claim that the District did not send a letter to parents in response to the SCBEST letter. Dkt. 78 at 12-13.[23] Plaintiffs also claim that it is unknown whether school districts routinely accept credits for religion courses when students transfer from private schools. *Id.* at 14.

---

[22] The record does not reveal the exact nature of SCBEST's request for addresses. But Plaintiffs have not shown why it matters whether the request was based on federal law, South Carolina law, or on some other basis.

[23] Plaintiffs also raised an immaterial evidentiary issue in response to the District's statement of undisputed material facts. Plaintiffs complain that Rodney Graves was not shown a document *that Plaintiffs marked as an exhibit at his deposition*. Dkt. 78 at 13. The statement in question is the District's account that Rodney Graves "explained in a newspaper article [in March 2007] that no students could sign up to take a released time course until the District developed implementation guidelines." Dkt. 72-1 at 8, citing Dkt. 73-4, D-Ex. B-2 (Graves dep.) at dep. ex. 177. The District has cured whatever evidentiary problem there may have been with the attached declaration of Rodney Graves, D-Ex. O, where he declares that he recalls being interviewed for dep. ex. 177 and that the statements there attributed to him "are true and accurate statements I made to the newspaper reporter concerning the School District's policy."

Plaintiffs' quibbling does not create an issue of material fact because they provide no evidence that the District has a written or unwritten policy or custom of advancing religion, and their unsupported personal speculations are not a sufficient substitute.

    **1. Plaintiffs tacitly concede that the District's released time Policy does not advance religion.**

        **a) Plaintiffs have not provided any evidence that the District has an unwritten policy or custom of advancing religion.**

As with *Lemon's* purpose prong, under *Monell* Plaintiffs must show that the District has a policy or custom of advancing religion. Neither Plaintiffs' summary judgment brief nor their response to the District's motion offers summary judgment evidence demonstrating an official policy or custom. *See* Dkt. 79 at 22.

        **b) Plaintiffs' claims of favoritism by individual District officials do not create an issue of material fact.**

The District has shown that it has implemented the Policy without favoritism. Dkt. 72-1 at 23-25. Plaintiffs' arguments to the contrary, Dkt. 78 at 12, citing Dkt. 71-1 at 21-24, fail for two reasons. First, even if Plaintiffs' claims of favoritism and overly-close cooperation on the part of District officials were true—and they are not—they would not establish liability because there is no evidence of a policy or custom under *Monell*. Dkt. 79 at 21. Second, Plaintiffs have not shown that District officials treated SCBEST any more favorably than any other outside organization that interacted with students. *Id*. at 21-25. To the contrary, the record shows that District officials steadfastly refused to give SCBEST special treatment when requested. *Id*., Dkt. 72-1 at 10-11. Plaintiffs have not shown, and cannot show, otherwise.

    **2. The District's policy of accepting transcripts from an accredited school does not create an issue of material fact.**

Finally, the District has demonstrated that it has not endorsed religion by accepting transcripts from an accredited school. Dkt. 72-1 at 25-26; Dkt. 79 at 26-27. Plaintiffs concede that the District treats transcripts from released time students the same way it treats transcripts from students coming to the district from private schools and students who attend other off-campus

13

electives. Dkt. 71-1 at 6; Dkt. 78 at 13-14.

Plaintiffs nevertheless maintain that such undisputed evidence of even-handed treatment is "irrelevant." Dkt. 78 at 13-14. But the Establishment Clause does not require the District, as Plaintiffs suggest, to show "callous indifference" to religious students or religious community groups. *Ehlers-Renzi* v. *Connelly School of the Holy Child, Inc.*, 224 F.3d 283, 287 (4th Cir. 2000). Instead, "the government may (and sometimes *must*) accommodate religious practices and that it may do so without violating the Establishment Clause." *Corp. of Presiding Bishop* v. *Amos*, 483 U.S. 327, 337 (1987) (quoting *Hobbie* v. *Unemployment Appeals Comm'n*, 480 U.S. 136, 144-45 (1987)) (emphasis added).

As the District has continually pointed out since this lawsuit was filed, Plaintiffs' theory of the Establishment Clause would find more than merely the Policy unconstitutional. It would overturn all released time policies in the United States, invalidate the RTCA, and even make it impossible for students to transfer from accredited private religious schools to public schools.[24] Dkt. 35, 48-1, 50 & 97 at 27-29. No court has ever found that that a public school "advance[s] religion through its own activities and influences"[25] when it records transfer grades and credits earned at an accredited private religious school. Plaintiffs have presented no reason why the Court should overturn this legal, exceedingly common, and uncontroversial practice.

---

[24] Plaintiffs claim "there is no record in the evidence that any school district in the United States other than defendant accepts religious instruction courses for elective credit." Dkt. 78 at 14. However, the record includes much undisputed evidence establishing this proposition: Former Oakbrook headmaster Steven Smith testified that the SCBEST course was substantially similar to Oakbrook's own religion courses, D-Ex. N-3 (Smith dep.) at 39:17-23, and both Mr. Smith and Oakbrook's 30(b)(6) representative both testified that Oakbrook students receive credit for their religion classes when they transfer to public schools. *Id*. at 41:6-15; Dkt. 71-9, P-Ex. 8 (Oakbrook 30(b)(6) dep.) at 33:12-18. Public schools in Georgia have been giving credit for released time for 15-20 years. Dkt. 71-7, P-Ex. 6 (Hartgrove dep.) at 14:10-15:9; Dkt. 79-2, D-Ex. G-1 (SCBEST dep.) at 52:15-53:4; Dkt. 76-7, D-Ex. B-31 (Stevens dep.) at 11:4-12:8, D-Ex. N-3 (Smith dep.) at 11:24-12:5. SCBEST also offers released time for elective credit in Spartanory County School Districts 3 (Broome) and 6 (Dorman). Dkt. 71-6, P-Ex. 5 (SCBEST dep.) at 13:2-4; Dkt. 74-3, D-Ex. B-10 at 85:24-86:4. Furthermore, the Director of Guidance at SHS has testified that a student has transferred in with released time credits taken while enrolled at another public high school. Dkt. 80-10, D-Ex. J (Wolfe Decl.) at ¶ 13.

[25] *Madison* v. *Riter*, 355 F.3d 310, 318 (4th Cir. 2003) (quoting *Amos*, 483 U.S. at 337).

### D. Plaintiffs have failed to create an issue of material fact regarding excessive entanglement.

As the District demonstrated in its opening brief, the undisputed facts show that nothing about the Policy, either on its face or in its implementation, creates excessive entanglement with religion. Dkt. 72-1 at 27-30.

Plaintiffs' response fails to engage the District's arguments, and thus fails to disturb its conclusion. Plaintiffs spend three pages arguing that *Lanner*—which upheld credit for released time[26]—was "unremarkable" and wrongly decided. Dkt. 78 at 14-16. They do not dispute, however, *Lanner's* statement that "the entanglement exceeds permissible accommodation and begins to offend the establishment" only when "the program is structured in such a way as to require state officials to monitor and judge what is not religious in a private religious institution." *Lanner*, 662 F.2d at 1361 (citing *Lemon*, 403 U.S. 602), cited by District at Dkt. 72-1 at 27. Likewise, Plaintiffs decline to engage the District's citations to *Ehlers-Renzi* and *Lemon*. Instead, they rely on *Larkin*, which states that "the choice has been made that government is to be entirely excluded from the area of religious instruction." Dkt. 71-1 at 18 (citing *Larkin* v. *Grendel's Den*, 459 U.S. 116, 126 (1982)). Plaintiffs fail to mention that the next and last time this quotation appears in a Supreme Court opinion was the following year, in Justice Marshall's dissent in *Mueller* v. *Allen*, the case that held that "comprehensive, discriminating, and continuing state surveillance" is "necessary [for a challenged action] to run afoul of" *Lemon's* entanglement prong." 463 U.S. 388, 403 (1983) (quoting *Lemon*, 403 U.S. at 619).

## CONCLUSION

For the foregoing reasons, and those stated in the District's memoranda in support of its motion for summary judgment and in opposition to Plaintiffs' motion for summary judgment, the District's motion for summary judgment should be granted.

---

[26] *See supra* at 8 & n.13.

15

Respectfully submitted,

/s/Kenneth E. Darr, Jr.
Kenneth E. Darr, Jr. (Fed. I.D. #989)
Lyles, Darr & Clark, LLP
104 N. Daniel Morgan Ave., Suite 300
Spartanburg, South Carolina 29306
kdarr@ldclaw.com
Telephone: (864) 585-4806
Facsimile: (864) 585-4810

Eric C. Rassbach (admitted *pro hac vice*)
Lori H. Windham (admitted *pro hac vice*)
Eric N. Kniffin (admitted *pro hac vice*)
The Becket Fund for Religious Liberty
3000 K St. NW, Suite 220
Washington, DC 20007
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

Attorneys for Defendant
Spartanburg County School District No. 7

December 16, 2010
Spartanburg, South Carolina